FRANCES FLEGENHEIMER, as Administratrix of the Estate of ARTHUR FLEGENHEIMER, Deceased, Appellant, *v.* THOMAS A. BROGAN, Respondent.

Argued October 7, 1940; decided November 26, 1940.

*Ulysses S. Adler* for appellant.

*Sydney A. Syme* and *Irving J. Bland* for respondent.

LOUGHRAN, J. Plaintiff sues as an administratrix to recover judgment for a sum of money only. The complaint alleges that her intestate at the time of his death was the

real and actual owner of the capital stock of a domestic corporation which had been issued to one Vogel as his dummy and agent. Three causes of action are set forth: (1) That after the death of the intestate the defendant, by the subterfuge of a pretended purchase thereof, acquired the corporation's capital stock, with knowledge that it belonged to the plaintiff; (2) that through his control of this stock the defendant prevented payment to the plaintiff of an indebtedness of the corporation to the intestate for cash he had advanced to it; and (3) that by the same means the defendant also caused the corporation to procure and file an instrument of satisfaction of a mortgage for $280,000 which the corporation had given to a third party for the benefit of the intestate.

No argument against the sufficiency of the complaint has been made.

In his answer the defendant sets forth a defense which alleges that the corporation mentioned in the complaint made and sold beer and ales in premises known as the Yonkers Brewery, under permits secured by it from the Federal and State liquor authorities; that the grant of like permits had theretofore been withheld because of the rumored ownership of the Yonkers Brewery by plaintiff's intestate; that the organization of the corporation and the issuance to Vogel of its capital stock "were part and parcel of a fraudulent plan, contrivance and scheme to keep secret from the Federal and State authorities the identity of plaintiff's intestate as the true undisclosed owner and operator of said brewery * * * for the purpose of inducing Federal and State authorities to issue permits for the manufacture and sale of beer and ales at said brewery"; and that at the times in issue " the defendant had no knowledge of the interest of plaintiff's intestate in said brewery or in the capital stock of the corporation or corporations owning same, or of his interest, if any, in said $280,000 bond and mortgage, or said cash advances, or of the aforesaid plan or scheme."

Plaintiff moved for an order striking out this defense for invalidity apparent on the face thereof. The motion was granted at Special Term and denied at the Appellate Division where the plaintiff was given leave to present to us the question whether this defense is sufficient in law.

In her capacity as administratrix plaintiff merely continues the personality of her intestate before the law for the purposes of the general administration of his estate. Her present motion is a constructive admission that the foregoing allegations of the challenged defense are true. She so admits that the property upon which she now makes claim through her intestate had been clandestinely devoted by him to ends that were radically contrary to the Alcoholic Beverage Control Law (Cons. Laws, ch. 3-B, §§ 110, 111, 118, subd. 2, 130). In effect, then, this action is one brought by an alleged secret owner to vindicate his assertion of beneficial title to property he had parted with in order to perpetrate a fraud upon the statute which regulates and controls traffic in alcoholic beverages.

Conceding all this, plaintiff replies that her intestate's unlawful use of his property did not empower defendant to convert it. She makes the defendant's allegation of his own good faith the basis for an argument that he may not question the legality of transactions in which he had no part.

But our primary concern is not with the position of the defendant. The immediate question is whether on the presently admitted facts a recovery by the plaintiff should be denied for the sake of public interests. This is a question of public policy in the administration of the law. " The principles of public policy remain the same, though the application of them may be applied in novel ways. The ground does not vary. As it was put by TINDAL, C. J., in *Horner* v. *Graves* (7 Bing. 735, 743), ' Whatever is injurious to the interests of the public is void, on the grounds of public policy.' " (*Naylor, Benzon & Co.* v. *Krainische Industrie Gessellschaft,* [1918] 1 K. B. 331, 342, 343.)

The transactions of plaintiff's intestate were clearly destructive of the purpose of a statute which was enacted " for the protection, health, welfare and safety of the people of the state." (Alcoholic Beverage Control Law, § 2.) We think those transactions were so far against the public good as to disable the plaintiff from invoking the aid of the court in her endeavor to disengage herself (as administratrix) from the unlawfulness of the conduct of her interstate. (See American Law Institute, Restatement of the Law, Restitution, § 140; *Robertson* v. *Sayre*, 134 N. Y. 97. Cf. Pers. Prop. Law, § 19 [Cons. Laws, ch. 41]; Real Prop. Law, § 268 [Cons. Laws, ch. 50].)

The order should be affirmed, with costs, and the question certified should be answered in the affirmative.

FINCH, J. (dissenting). The question before us is whether the first separate defense to the action is sufficient in law.

In brief, plaintiff alleges that her intestate was the owner of certain properties consisting of the common stock of a brewery corporation, of a bond and mortgage upon the brewery which was unpaid to the extent of $132,000, and of a floating debt of upwards of $100,000 for money loaned. It is also alleged that as the result of a series of conveyances the name of one Vogel appears as the owner on such written records as there are, but that he was merely an agent and dummy who lent his name for the convenience and benefit of intestate. It is then charged that Vogel conveyed the properties to defendant without consideration, and that defendant converted them to his own use. As part of the transaction between Vogel and defendant, the latter caused the corporation to pay $3,000 to Vogel by way of reimbursing him for his disbursements while holding the properties as a dummy. In addition to converting the common stock, defendant proceeded to render worthless the bond and mortgage and the floating indebtedness by various means including that of having the corporation file a voluntary petition in bankruptcy.

To all of this defendant has interposed a plea of confession and avoidance. By that plea the conversion necessarily

is admitted, but defendant seeks to avoid liability upon the ground that intestate employed the name of Vogel as record owner for an illegal purpose. Defendant alleges that it was necessary for intestate to conceal his identity as the true owner in order to obtain permits for the operation of the brewery from the Federal and State authorities, and that such permits were issued by the authorities in ignorance of the real ownership of the brewery. Defendant alleges no facts which show why the licenses to sell and manufacture beer would have been denied to intestate, and there is no averment that there was lawful cause to deny such licenses solely upon the ground of ownership by intestate.

Although the complaint charges defendant with knowledge of the fact that intestate was the real owner, the affirmative defense under consideration contains a denial of any such knowledge until long after the gratuitous transfer by Vogel to defendant. It is not suggested either that defendant's disclaimer of knowledge is relevant to the plea of illegality, or that the denial is well pleaded as part of the affirmative defense, but for purposes of this appeal it will be assumed that defendant was ignorant of intestate's ownership, for whatever that fact may avail defendant.

The issue, therefore, is whether a charge of conversion may be answered by the counter-charge that the converted property had been used by the owner in a business requiring governmental licenses and that the licenses were obtained by fraudulent representations.

No claim has been made that the complaint fails to allege a good cause of action. Plaintiff alleges title to certain properties and that defendant has converted them to his own use. That plaintiff had title is also alleged by the very plea whose sufficiency is the subject of this appeal; and upon this appeal involving only the pleadings we must assume that, if the occasion arose, plaintiff would be able to prove her title.

The plea of illegality seeks to invoke the familiar principle which is, in general, that the courts will not aid the parties to an illegal contract. What disposition would be made by the courts in an action between those representing

intestate and Vogel need not be considered here. It is sufficient that plaintiff now maintains an action against a third party for the conversion of goods of which plaintiff undeniably had title. In order for plaintiff to prove title it is no necessary part of her case to set up an illegal contract as the basis of her rights. Thus, in Salmond and Winfield on The Law of Contracts (1927), pages 150 and 151, the learned authors consider the rule barring restitution to the parties of an executed illegal contract, and they then state several exceptions to the general rule. By way of the first exception, the authors state the following: " In the first place, there is an apparent exception in the case where a party seeking restitution is not bound to rely on the illegality of the contract, but relies instead on his subsisting ownership of the property which is the subject-matter of the contract. If, for example, I lend my horse to a man for a week in order that he may use it in the commission of a highway robbery, and he refuses to return it to me at the end of the week, there is no doubt that I can recover it from him, notwithstanding the illegality of the transaction. For I am not bound to sue on the illegal contract, being entitled, instead of doing so, to rely on the fact that I am the owner of the horse and to sue in detinue for the tort of wrongfully detaining it. The borrower could not effectually plead in answer to my claim that he obtained the horse in pursuance of a contract, for I could reply that the contract had come to an end by effluxion of time, and I should not be driven to the inadmissible reply that the contract was illegal. Nor could the borrower plead that the contract under which he obtained the horse was illegal, for the action is not based on any contract. He would therefore have no defence at all, and I should recover the horse without having to rely on any participation of mine in an illegal transaction."

In *Hall* v. *Corcoran* (107 Mass. 251) plaintiff hired out his horse to defendant on Sunday in violation of the statute. Defendant drove the horse and sleigh to a place other than agreed upon and in so doing damaged the plaintiff's horse and sleigh. It was held that the plaintiff may recover, the court saying: " But the fact that the owner of property

has acted * * * unlawfully with regard to it is no bar to a suit by him against a wrongdoer, to whose wrongful act the plaintiff's own illegal conduct has not contributed " (p. 253).

In *Pelosi* v. *Bugbee* (217 Mass. 579) plaintiff, a peddler, sold a piece of jewelry upon a contract of conditional sale. " T," the buyer, pledged the ring with the defendant, a pawnbroker, who acted in good faith. It was held that the plaintiff may recover in an action for the conversion. " The contract between the plaintiff and [the buyer], being illegal, neither party will be allowed to maintain an action to enforce any claim under it. The plaintiff in the case at bar, however, is not seeking to enforce any rights under the illegal contract made with [the buyer], but seeks to recover the value of the ring, to which he claims title and which has been converted by the defendant" (pp. 581, 582).

It is said that the plea of defendant should be sustained not because of any solicitude for defendant, but because of the public interest in the enforcement of the State and National liquor control laws. We must turn, therefore, to see what consequences these statutes impose.

Since intestate used the name of Vogel as the ostensible owner of the brewery for the purpose of procuring the necessary permits, he obtained these permits as a result of fraudulent representations and there is no doubt that the permits could have been rescinded. (Alcoholic Beverage Control Law, § 118.) In fact, we may assume for the purposes of this appeal that in operating under a license obtained through fraud, intestate's act was the equivalent of running a brewery without a license. In so doing intestate became subject to the fines and imprisonment which are established as the penalties for the violation of the laws. (Alcoholic Beverage Control Law, § 130; U. S. Code, tit. 27, § 207.) However, intestate did not become an outlaw and was not required to suffer that his property be liable to seizure at the hands of any stranger. Thus, while we undoubtedly must enforce the public policy in regard to the control of intoxicating liquors as expressed

by the statutes of the State and National governments, we may not extend that policy beyond that which the respective Legislatures have chosen to adopt. To suffer forfeiture of the property at the hands of any stranger is not one of the consequences prescribed by the statutes for the violation of their provisions, and it is not open to the courts to add such a penalty. So far as concerns the doctrine that where the parties are engaged in an illegal scheme the courts will not aid the one or the other (Restatement of the Law, Restitution, § 140), that doctrine is inapplicable here, for in the present action the plaintiff does not have to rely upon any illegal scheme in order to establish a good cause of action. ]

It is said that this court is committed by the decision in *Robertson* v. *Sayre* (134 N. Y. 97). In that case property was conveyed to one person though the consideration had been paid by another, and after the death of the latter his heirs brought an action to recover the property from the person holding under the grantee. The court there construed 1 R. S. p. 728, §§ 50, 51, 52, which provided that where title is taken by one and consideration is paid by another title passes to the former except in so far as the rights of the creditors of the latter are concerned. A reading of the opinion of the court in that case clearly indicates that the person who paid the consideration did not have any title or any other interest as a basis for recovery of the property. Such is not the situation in the case at bar, where not only is title alleged in the complaint, but it is reiterated by defendant as part of the plea of illegality.

To allow the interposition of the affirmative defense offered by the defendant will be to impose consequences of an exceedingly harsh character upon persons who, in dealing with their property, are guilty of some infraction of the law. It is submitted that such a rule goes beyond the bounds heretofore fixed by the authorities and is unnecessary upon any reasons of public policy.

The order of the Appellate Division should be reversed and the question certified should be answered in the negative.

CONWAY, J. (dissenting). I concur in the dissenting opinion, but I wish to add this. The prevailing opinion says: " The immediate question is whether on the presently admitted facts a recovery by the plaintiff should be denied for the sake of public interests. This is a question of public policy in the administration of the law."

Since it is a matter of public policy rather than of *stare decisis*, in my judgment the use of the sword of judicial inquiry into the issues raised by the pleadings, after striking out the defense under consideration, would accomplish infinitely more for the public good than permitting the interposition by the defendant of the shield of that defense. A litigation of those issues would terminate the fraud. A case can be conceived, indeed, it could very well be the instant one, where the associates of a man such as the deceased, would, subsequent to his death, substitute an agent or dummy of their choosing in place of the one selected by the deceased. Under him the fraud upon the statute could be continued. It must be remembered that defendant is not the original agent or dummy but one who, it is alleged by plaintiff, converted the property in suit. As to the original dummy of the deceased, I agree that public policy would require a dismissal of an action brought by plaintiff to obtain the property.

The principles of public policy remain the same, it is true, but as the ways of the evildoer vary with his surroundings, the customs and opportunities of the times and the invention of new methods of aggrandizement, currently called " rackets," the sound application of the principles of public policy, assuming *arguendo* their applicability here, may require, in certain periods and in a metropolis of millions of people, a change in their application. In my judgment the time for that change in application has come in relation to the facts here disclosed. For this reason alone I would vote to reverse.

LEHMAN, Ch. J., SEARS and LEWIS, JJ., concur with LOUGHRAN, J.; FINCH, J., dissents in opinion in which RIPPEY and CONWAY, JJ., concur, CONWAY, J., in a separate opinion.

Order affirmed, etc.