EDWARD P. PATTISON, Appellant, *v.* GRACE PATTISON, Respondent.

Argued April 4, 1950; decided May 25, 1950.

*Louis L. Babcock* and *Francis J. Maloney* for appellant. I. The action was tried without regard to the technical form of the complaint. Plaintiff's recovery on the facts shown was in accord with law and should be sustained irrespective of defects in the complaint or the impropriety of the form of relief granted. (*Gillies* v. *Manhattan Beach Improvement Co.*, 147 N. Y. 420; *Henderson* v. *Henderson*, 247 N. Y. 428; *Brady* v. *Nally*, 151 N. Y. 258; *Griffin* v. *Keese*, 187 N. Y. 454; *Doty* v. *Brown*, 4 N. Y. 71; *Ogden* v. *Alexander*, 140 N. Y. 356; *Armstrong* v. *Du Bois*, 90 N. Y. 95; *Burt Olney Canning Co.* v. *State of New York*, 230 N. Y. 351; *Richardson* v. *Carpenter*, 46 N. Y. 660.) II. The facts established by the Referee's decision and affirmed by the Appellate Division warranted a judgment for the establishment of a constructive trust with respect to the property conveyed to defendant. (*Foreman* v. *Foreman*, 251 N. Y. 237; *Sinclair* v. *Purdy*, 235 N. Y. 245; *Fraw Realty Co.* v. *Natanson*, 261 N. Y. 396.) III. The Appellate Division should have directed judgment establishing a constructive trust instead of dismissing the complaint. (*Boissevain* v. *Boissevain*, 252 N. Y. 178; *Winter* v. *American Aniline Products*, 236 N. Y. 199; *Lonsdale* v. *Speyer*, 249 App. Div. 133; *Small* v. *Kronstat*, 175 Misc. 626.)

*Nathan Hyman* for respondent. Plaintiff admittedly could not pay his bills as they accrued. His conveyance was without consideration and impeded a creditor. Under the statute, the transaction was, therefore, fraudulent and his solvency and wealth under the circumstances are immaterial. Plaintiff being guilty of statutory fraud is not seeking equity with clean hands. (*Hearn 45 St. Corp.* v. *Jano*, 283 N. Y. 139; *Matter of Associated Gas & Elec. Co.*, 61 F. Supp. 11, 149 F. 2d 996, 326 U. S. 736.)

CONWAY, J. Plaintiff, a man of seventy-four years, recovered a judgment against his sister, aged seventy-seven, declaring a deed executed by him to her to be null and void and directing that he be reinvested with title to the property. The Official Referee, who was to hear and determine, found that plaintiff had conveyed the property to his sister in 1943, upon her oral promise to deed it back to him when a claim against plaintiff had been satisfied. The Referee further found that the claim had been satisfied in 1948, that plaintiff had demanded the reconveyance of the property and that defendant had broken her promise to reconvey. In directing judgment in favor of plaintiff, the Referee relied upon the well-established rule that, where the parties are in a confidential relationship, a constructive trust arises in favor of the grantor when the grantee breaches an oral promise to reconvey. (See, e.g., *Sinclair* v. *Purdy*, 235 N. Y. 245, 253; *Foreman* v. *Foreman*, 251 N. Y. 237; *Fraw Realty Co.* v. *Natanson*, 261 N. Y. 396; Scott on Trusts, §§ 44, 485; 3 Bogert on Trusts, §§ 482, 496; 4 Pomeroy's Equity Jurisprudence, § 1056a; Restatement, Restitution, § 182; Restatement, Trusts, § 44.)

The Appellate Division, however, reversed the judgment on the law and dismissed the complaint. In its memorandum, it properly pointed out that the complaint was insufficient as one to set aside a deed for fraud and that, as the Referee had also held, there was no proof of fraud on the part of the defendant sister. The court continued: " * * * Neither can the judgment be sustained as one in an action for the declaration of a constructive trust, as argued upon the appeal. The complaint does not allege such a cause of action. There are no findings upon which to base a judgment in such an action and the relief given by the judgment is not that which would be

given in such an action. The judgment declares the deed to be null and void and does not purport to impress a lien upon the property and direct reconveyance. * * * " (276 App. Div. 823.)

While we agree with the Appellate Division that the complaint should be dismissed, we do not think that the theory adopted by that court is correct.

In the first place, we think that the complaint contains an adequate statement of the facts necessary for a cause of action to impress a constructive trust upon the property involved, and that, under it, plaintiff had the right to attempt to establish the existence of such a trust.

However, even if the complaint did not sufficiently allege such a cause of action, that would not be ground for disturbing the judgment in plaintiff's favor under the circumstances here presented. The record shows that defendant's counsel was fully aware that plaintiff was attempting to succeed upon such a theory. This was made abundantly clear in the questions put by defendant's counsel in his cross-examination of plaintiff, wherein he repeatedly referred to plaintiff's action as one involving a claimed trust. Moreover, defendant's counsel moved at the close of plaintiff's case for dismissal of the complaint on the ground that it did not state facts sufficient to constitute a cause of action " on the view of constructive trust ". The motion was plainly addressed to the sufficiency of the complaint and not to any alleged variance between the proof and the complaint. If the motion had been made specifically upon the latter ground, of course, plaintiff could have moved to conform the pleadings to the proof and, under the circumstances, the motion undoubtedly would have been granted. In the absence of such a motion, this court has said, the "parties may, if they so elect, depart from the strict issues made by the pleadings and try other questions relating to the merits of the controversy by consent or acquiescence." (*Farmers' Loan & Trust Co.* v. *Housatonic R. R. Co.,* 152 N. Y. 251, 254. See, also, *Fallon* v. *Lawler,* 102 N. Y. 228, 233; *Gillies* v. *Manhattan Beach Improvement Co.,* 147 N. Y. 420, 423–424; 4 Carmody on New York Practice, § 1366, p. 3163.)

The Appellate Division, in its memorandum, also expressed the view that the judgment could not be sustained on the theory

of constructive trust because the relief prayed for in the complaint and granted by the order and judgment — the declaration that the deed was null and void — was not the relief usually accorded in a constructive trust case, viz., declaration that a trust be impressed upon the property with a direction to defendant to reconvey to plaintiff. It should be observed that the effect of either judgment is the same. In any event, the mistake in remedy is not ground for dismissal of the complaint as it may be corrected under the provisions of section 111 of the Civil Practice Act. (See *Boissevain* v. *Boissevain,* 252 N. Y. 178, 181.)

That brings us to the merits of the case. We must determine whether the Referee on all the facts disclosed could properly hold that plaintiff was entitled to a return of the property. To answer that question, a fuller statement of the facts must be given.

The property involved is located on Delaware Avenue in Buffalo and is improved with a single house. Plaintiff acquired title to the property in 1913, but the house was occupied by his mother and sister, as he was living elsewhere with his then wife. In the year 1924, the mother died. Plaintiff and his wife thereupon conveyed the property to his sister, the defendant herein. There was at that time a mortgage of $4,500 upon the property, held by the Erie County Savings Bank. In 1925, at plaintiff's suggestion and with his assistance, the sister executed a second mortgage for $1,000, the proceeds of which were used in part to pay the balance due for the mother's funeral expenses. Previously, the cost of the mother's nursing and medical expenses had been shared by plaintiff and his sister. The sister had an independent income for over twenty years from her employment in the cafeteria of the school system.

In 1929, plaintiff's wife died and he went to live with his sister in the Delaware Avenue house. In 1939, the bank insisted upon repayment of the $1,000 which, as noted, had been borrowed in 1925 to defray the mother's funeral expenses. Defendant obviously did not have the money to pay the bank and plaintiff was either unable or unwilling to do so. Accordingly, an action for foreclosure of the second mortgage was commenced and, on April 25, 1941, the bank took title to the property by a referee's deed. Plaintiff and defendant, of course,

were still living there. On June 24, 1941, the plaintiff bought the property back from the bank subject to a purchase-money mortgage of $5,400. In order to obtain the property, plaintiff had to pay the bank $1,000. It appears that plaintiff did not have that amount of money and found it necessary to borrow the sum from his nephew, who was a resident of Detroit, Michigan. Title to the property remained in plaintiff's name from that time until February 2, 1943.

About a week before the latter date, according to plaintiff's testimony, his nephew " sued me, got a judgment against me, but before he took the judgment against me, when he had served papers on me, I spoke to my sister and said, ' Now, I want some time on this thing. I don't want him to come on and grab that property, so I'd better deed this to you in order that he won't be able to do that.' " Plaintiff further stated that he told his sister he " was going to deed the property to her as a precaution so that he [the nephew] wouldn't seize it and we would be stranded, put out of the house, in other words." His sister, he said, " thought that was a very good idea " and " said she would give it back." Plaintiff didn't tell her when he wanted it back, for " I couldn't state when I wanted it back, because I didn't expect to get it back until I paid the judgment." " I told her I wanted it back when I paid that judgment " and " She said she would give it back."

At the time he conveyed the property to his sister, plaintiff testified, he owned a house in Fort Erie worth $10,000, a third interest worth $25,000 in property in Mount Morris and certain property in Ontario, Canada, worth $100,000. There was no other evidence as to the fair salable value of those properties.

On cross-examination, plaintiff stated that he made no payments on account of the $1,000 loan from his nephew except " six months' interest ". He continued:

" Q. Why did you restrict your payments to six months' interest? A. *I didn't have the money.*

" Q. So you weren't able to *pay your bills as they accrued,* were you? A. *No.*

" Q. So that at the time you weren't able to pay your bills as they accrued, and at a time when your nephew was threatening legal action to recover his money, you put title of this

property back into your sister's name for no consideration whatever, is that right? A. Yes." (Emphasis supplied.)

Later on further cross-examination, he testified:

" Q. You weren't very diligent, were you, about asking for a reconveyance of that property? A. I was.

" Q. You made very certain not to ask for it, according to your own testimony, until this judgment had been paid up years later. A. *There was no reason to ask for it before.*

" Q. That is true, and there was very good reason not to ask for it before, wasn't there. A. Yes.

" Q. Notwithstanding the fact that the judgment was against the property, so that the judgment being the judgment existing while as you claim your sister was an unknown trustee, if she had reconveyed to you, the judgment immediately would have become a lien? A. On the property, yes.

" Q. So that your avowed purpose in leaving it in her hands all these years was to defeat the rights of your nephew who had the judgment? A. No.

" Q. Well, it was to hinder his rights, was it not, and delay them and prejudice them? A. Not to prejudice them.

" Q. *To hinder and delay them?* A. *Until such time as I could pay the judgment. That was the original reason for the original transfer.*

" Q. Then, admittedly, then, you weren't able to pay the $1,000 judgment all the years until she had title? A. Not until 1947.

" Q. Not until you would pay it, although you have property worth thousands of dollars in Mount Morris and Canada. A. Yes, I was paying taxes on them and in order not to lose those properties I had to keep up my taxes.

" Q. Do you know whether this judgment attached any of those properties? A. I don't believe so." (Emphasis supplied.)

It appears that an execution was issued upon the judgment obtained by the nephew. In supplementary proceedings, the defendant sister was served and made an affidavit that she was the owner of the furnishings in the property in question. She was, of course, the record owner of the title to the property. The plaintiff brother was " on the road " at the time and was not served. The sister said that he would " get in touch " with the nephew's attorney when he returned, but he did not do so until " a year or two later ".

Plaintiff remarried in March, 1947, and brought his wife to live with him in the house with the sister. Since that time, according to defendant, she and her brother "have been on the outs".

This action was commenced in October, 1947. There is testimony that the nephew's judgment was satisfied by plaintiff earlier in 1947, but the title search reveals, and the Referee found, that it was satisfied on May 21, 1948.

Plaintiff has demanded that defendant reconvey the property back to him and she has refused.

As we have mentioned above, the law is clear that, despite the parol evidence rule and the Statute of Frauds, the courts will enforce a constructive trust where land is conveyed to a person who is in a confidential relation to the transferror for whom he has orally agreed to hold it. There is an obvious and important qualification upon that doctrine, however. The intended trust, in the words of the Restatement of Trusts (§ 63, subd. [1]) "is invalid if the purpose of the settlor in creating the trust is to defraud his creditors or other persons." In such a case, the fraudulent grantor may not recover the property, even though the grantee knew of the purpose of the intended trust. Bogert states the reasoning behind the rule well in his work on trusts (Vol. 1, § 211, pp. 616–617): "Frequently the settlor who participated in the improper creation of the trust seeks from equity relief as a cestui under the trust * * *. In such case equity is very much disinclined to afford relief because the complainant does not come into court with clean hands and to enforce the trust for him * * * would be to afford comfort and encouragement to a wrongdoer. Generally, therefore, the court leaves the parties as it finds them, and the fraudulent trustee is enabled to keep the property as against the fraudulent settlor. * * * *" (See, also, 1 Scott on Trusts, § 63; 3 Pomeroy's Equity Jurisprudence, §§ 968–973.)

As long ago as 1857, we recognized this rule as settled in *Ford* v. *Harrington* (16 N. Y. 285) where we said (p. 288):

"The referee has found that * * * plaintiff * * * assigned the contract for the purchase of the land to the defendant, for the express purpose of placing it, and his interest in the land under the contract, *beyond the reach of his creditors.* At least such is the necessary inference from the facts found,

" The general rule, that courts will, under such circumstances, extend no remedy to a grantor or vendor of property to recover back from the grantee or vendee the property thus transferred, although the transfer is without consideration, is too well settled to be now called in question." (Emphasis supplied.) (See, also, *Pierce* v. *Pierce*, 253 App. Div. 445, 447, affd. 280 N. Y. 562; *Furman* v. *Furman*, 178 Misc. 582, 584–585, affd. 262 App. Div. 512, affd. 287 N. Y. 772; *Furman* v. *Furman*, 259 App. Div. 988, motion for leave to appeal dismissed 284 N. Y. 591; *Simis* v. *Simis*, 146 App. Div. 655, 660; cf. *Flegenheimer* v. *Brogan*, 284 N. Y. 268; *O'Connor* v. *O'Connor*, 263 App. Div. 820, affd. 288 N. Y. 579.)

Here, the evidence clearly shows beyond contradiction that the sole purpose of the conveyance was the fear that the nephew would seize the house under the judgment and that plaintiff was attempting to put the property beyond the reach of the nephew. No other view of the record is possible on plaintiff's own testimony. The Referee expressly so found, but he seemed to think that the fact that plaintiff was solvent at the time was a complete answer to this objection. In this connection, it must be noted that while plaintiff says he was possessed of certain properties of large value, he frankly confessed that he could not meet his debts as they accrued, and in particular, that he did not have the money to pay his nephew's valid claim. Thus, while plaintiff may not have been technically insolvent within the words of section 271 of the Debtor and Creditor Law, at the time of the conveyance, the facts of the case and plaintiff's own admissions, leave room for no other inference than that plaintiff made the transfer with an intent to hinder, delay and defraud his creditor and that he succeeded in his plan for over five years. If he were solvent, it only makes his action worse for he was deliberately delaying his creditor from receiving payment of a just debt by divesting himself of an asset. Having frustrated, impeded and delayed his creditor for five years, and having remarried and brought his new wife home, he now finds it opportune to pay the judgment and demand the house back. To allow such a plan to succeed would put a premium upon dishonorable conduct.

A conveyance is fraudulent when the grantor, even though solvent, is motivated by an intent to hinder, delay or defraud

his creditors. (Debtor and Creditor Law, § 276.) In the instant case, the transfer was "made by the debtor with the actual intent thereby to impede or altogether defeat the efforts of the creditor" and it was therefore fraudulent. (*Hearn 45 St. Corp.* v. *Jano,* 283 N. Y. 139, 142.) As stated, the record before us permits no other inference, as matter of law, than that plaintiff in making the conveyance, actually intended to hinder, delay and defraud his creditor. Plaintiff said so. For that reason, equity will not afford relief, since plaintiff comes into court with unclean hands, but will leave the parties where it finds them.

Thus, although by a different path, we reach the same conclusion as the Appellate Division, that the complaint should be dismissed. The judgment appealed from should be affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS, DESMOND, DYE, FULD and FROESSEL, JJ., concur.

Judgment affirmed.