**RUTKIN   v.   REINFELD et al.**

United States District Court
S. D. New York.
June 22, 1954.

Maurice Edelbaum, New York City, for plaintiff.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for defendants Joseph H. Reinfeld, Renfield Importers, Ltd., and Harold C. Renfield (Theodore Kiendl, William R. Meagher, New York City, of counsel).

White & Case, New York City, for defendants Samuel Bronfman, Allen Bronfman and Browne-Vintners Co., Inc. (Lowell Wadmond, New York City, Thomas Kiernan, New York City, of counsel).

MURPHY, District Judge.

These are motions by defendants under Rules 50(a) and 50(b), Fed.Rules Civ. Proc., 28 U.S.C.A., (1) to dismiss the complaint and supplemental complaint and for a directed verdict at the close of plaintiff's case, (2) for a directed verdict at the close of all of the evidence, and (3) after verdict by the jury for plaintiff, to set aside that verdict and enter judgment on one directed for defendants. Judgment having been reserved on the first two sets of motions, all three are considered in this opinion.

Plaintiff sued to recover $22,000,000 in damages resulting from a single conspiracy among defendants affecting a partnership of which plaintiff was a member and a corporation in which he had an interest. In a supplemental complaint, plaintiff sought $500,000 more on account of, among other things, his conviction for attempted income tax fraud and evasion which plaintiff claimed was procured, as part of the same conspiracy, by perjured testimony given and procured by defendants and influence improperly exercised by them over certain federal employes. On motion by defendants during plaintiff's case, this count in the supplemental complaint was dismissed and no evidence supporting it was received on the ground that this court was collaterally estopped in this civil cause by the judgments of federal courts on this issue in the criminal action.[1] Defendants denied these claims generally and pleaded as affirmative defenses a general release and the statute of limitations.

Plaintiff alleged that he and defendant Joseph Reinfeld had been partners for a long time prior to May, 1931. According to his complaint, plaintiff and Joseph Reinfeld had equal shares in a transaction involving L. L. & B. Distilleries, Ltd. (hereafter called L. L. & B.). In May, 1931, Joseph Reinfeld negotiated with representatives of L. L. & B. in order to finance the company and buy a controlling interest in it. On July 2, 1931, Joseph Reinfeld entered into an agreement with L. L. & B. representatives, on behalf of himself and plaintiff, as partners, to invest $500,000 in L. L. & B. over a period of time, including the purchase of a first mortgage of $25,000 and a second mortgage of $50,000, upon a distillery, located at Chatham, Ontario, Canada. Plaintiff claimed that Joseph Reinfeld purchased the first mortgage, had it transferred to his nominee, and later made partial payments on the second mortgage. About July 3, 1931, Joseph Reinfeld and defendants Samuel and Allen Bronfman are alleged to have formed a conspiracy whereby Reinfeld was to break his agreement with L. L. & B., unjustly enrich the conspirators and deprive plaintiff of his share of the profits of the agreement and, as a further objective, all of the conspirators were to conceal their activities from plaintiff. In order to induce Joseph Reinfeld to break the agreement with L. L. & B. representative, defendants Samuel and Allen Bronfman are alleged to have delivered to Reinfeld, or his nominee, shares of stock in Distillers Corporation-Seagrams, Ltd. (hereafter called Distillers-Seagrams) and other benefits and emoluments unknown to plaintiff, and that all of them agreed to keep from plaintiff any information regarding these shares and other benefits. The breach of the agreement with L. L. & B. by Joseph Reinfeld was allegedly of benefit to the Bronfmans because L. L. & B. was in direct competition with Distillers-Seagrams.

Plaintiff claimed that pursuant to this conspiracy, the L. L. & B. distillery was sold in foreclosure of the second mortgage and that the L. L. & B. stock, previously acquired by Joseph Reinfeld, was

---

1. Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833, affirming Id., 3 Cir., 189 F.2d 431.

sold to a nominee of the Bronfmans, and that the Bronfmans agreed to indemnify Joseph Reinfeld against any loss and in fact paid him about $70,000 for counsel fees and other expenses incurred in the transaction.

Thereafter, according to plaintiff, Joseph Reinfeld told him that the partnership interest in L. L. & B. had been sold to the Bronfmans for the amount invested by the partnership in L. L. & B. and that all transactions conducted by Reinfeld on behalf of the partnership had been carried out in good faith and for adequate considerations. Plaintiff alleged that these representations were false to the knowledge of Reinfeld and were made by him, with knowledge of the Bronfmans, to induce plaintiff to rely on them and to prevent him from inquiring into the details of the transactions. Plaintiff claimed that he relied upon these representations and that he did not discover their falsity until May 27, 1946. Plaintiff further alleged that he had never received any share in the benefits obtained by Reinfeld from the Bronfmans and that by reason of this conspiracy he has been damaged in the sum of $22,000,000.

Plaintiff's supplemental complaint alleged, in addition to the dismissed count relating to his conviction, an additional transaction in furtherance of the original conspiracy which caused him damage of $500,000. This transaction concerned Browne-Vintners Co., Inc. (hereafter called Browne Vintners Old), a corporation in which plaintiff and defendant Joseph Reinfeld, as partners, allegedly owned a majority stock interest, held as a matter of record under the names of Joseph Reinfeld and other nominees. Pursuant to the original conspiracy the defendants allegedly agreed in December 1940 that Reinfeld would cause the business and assets of Browne Vintners Old to be sold to Distillers-Seagrams for an inadequate price and that the sale would include the transfer of certain agencies then held by Browne Vintners Old for Cointreau, Piper Heidsieck and Remy-Martin. After the sale, Browne Vint-

ners Old was dissolved and the proceeds distributed to its shareholders but certain benefits allegedly accruing to Reinfeld were withheld from plaintiff and he claimed that he did not discover this until after July 1, 1948. The three agencies, Cointreau, Piper Heidsieck and Remy-Martin, were then transferred to defendant Renfield Importers, Ltd., a corporation controlled by defendants Joseph Reinfeld and Harold C. Renfield. Plaintiff claimed that this transfer took place without his knowledge or any consideration to him, and that further this transfer was part of the consideration to Joseph Reinfeld for his breach in 1931 of the agreement with L. L. & B. and for his cooperation with the Bronfmans in eliminating the potential competition which that distillery would have presented for them. Plaintiff alleged that the defendant Renfield Importers, Ltd., acquired these three agencies with full knowledge of the relationship between plaintiff and Joseph Reinfeld and of the fact that their acquisition was in part payment to Reinfeld for his breach of the agreement with L. L. & B. According to plaintiff, Reinfeld fraudulently represented to him and others that no consideration other than the cash mentioned in the agreement of sale had been paid and deliberately concealed the retention and acquisition of the three liquor agencies by Renfield Importers, Ltd., controlled by him and Harold C. Renfield.

In addition, Reinfeld was claimed to have represented fraudulently the extent of the interests of plaintiff, and others, in Browne Vintners Old, concealed from plaintiff the true value of his interest, and did not disclose to plaintiff other secret considerations and emoluments received by Reinfeld. Reinfeld was also charged by plaintiff with having fraudulently caused him, and others, to execute a general release in exchange for certain payments made by Reinfeld to them, which were represented by Reinfeld to be their proper shares in the proceeds of the sale of Browne Vintner's Old and also to be tax free to them.

Upon defendants' general denial and affirmative defenses of a general release and the statute of limitations, the issues of fact were tried over a five week period. Referring to the alleged "one single overall conspiracy" and two transactions (L. L. & B. in 1931, and the sale of Browne Vintners Old in 1940) "allegedly carried on in furtherance of the one conspiracy", the court left these three main issues upon which the jury was to return a general verdict:

1. Was there in fact a conspiracy to defraud the plaintiff?

2. Only if that question is answered in the affirmative, need this second one be decided, *viz.*, Was the relationship of each of the defendants, considered individually and separately, to such combination or conspiracy, such as to make such defendants participants in the conspiracy to defraud?

3. Only if questions one and two are answered in the affirmative, for some particular defendants, need the third question be decided with respect to such defendants, *viz.*, What amount of money in damages will justly compensate the plaintiff for his losses proximately caused by the participation of the defendants, or some of them, in a conspiracy to defraud?

In addition the court sought written answers to the following three interrogatories concerning each of the two transactions in event of a general verdict for the plaintiff in order to assist the court in resolving the issue raised by the affirmative defense of the statute of limitations:

(1) "Approximately at what time did any claim plaintiff may have had against defendants, or any of them, arise?

(2) "Approximately at what time did plaintiff actually become aware of such claim?

(3) "Approximately at what time should plaintiff have become aware of such claim in the exercise of reasonable care?"

After more than ten hours, the jury returned a general verdict of $77,200 in favor of the plaintiff against all of the defendants. The written answers to the interrogatories concerning the L. L. & B. transaction were respectively: "December 15, 1931", "May, 1946" and "Between December '31 to December '32;" those concerning the Browne Vintners Old transaction were: "December 20, 1940," "January, 1948" and "Sometime in 1947."

The principal grounds urged by defendants in support of their motions are (I) the statute of limitations, (II) the illegality of the transactions, and (III) the effect of the general release, and assignment, and considerations of the weight of the evidence. These only shall be considered and in that order.

## I

The first ground of objection is that plaintiff's cause is barred by the applicable period of limitation. Time limitations have been variously characterized as procedural in the perspective of the common law of conflict-of-laws,[2] as substantive under the civil law,[3] or occasionally as both affecting the right and the remedy.[4] Whatever the characterization, the Erie principle requires a federal forum having jurisdiction of a controversy on the basis of diverse citizenship to apply the conflict-of-laws principle of the state in which it sits,[5] including that state's conflict-of-laws

2. Restatement, Conflict of Laws §§ 603, 604 (1934).

3. See Story, J., LeRoy v. Crowninshield, C.C.D.Mass.1820, 15 F.Cas.No.8,269, p. 362, 2 Mason, 151.

4. See Davis v. Mills, 194 U.S. 451, 454, 24 S.Ct. 692, 48 L.Ed. 1067.

5. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477.

rule on applicable periods of limitation.[6]

The historic New York rule embodied the common law classification of time limitations as procedural and accordingly made applicable to causes of action accruing elsewhere the internal law of the forum.[7] By a statutory conflicts rule on time limitations adopted in 1877, the internal law of defendant's domicile at the time the action accrued was made governing.[8] This "borrowing" statute evolved by a series of amendments into its current form as a rule of alternate reference.[9] This rule requires for a suit like the instant one, in which the plaintiff is a nonresident and the cause of action arises outside the state, application of the statute of limitations of either the forum or the state where the cause of action arose.[10] Plaintiff must thus surmount the higher of two hurdles if his claim has arisen outside the forum.

Defendants insist that the claim is barred under this New York conflicts rule on time limitations. Putting aside any characterization of plaintiff's claim as a single wrong, defendants urge that for purposes of time limitation each of the two transactions should be viewed as separate causes of action. The first one relating to the L. L. & B. distillery, defendants argue, would be barred as an action for fraud and misrepresentation by either the Quebec period of two years which began to run in 1931 according to testimony of defendants' witness on the Canadian law,[11] or by the New York statute of six years running from the date, not of actual discovery of the fraud in 1946 according to the special finding of the jury, but when such discovery should have been made between 1931 and 1932, according to the same finding.[12] According-

ing to this contention, the second or Browne Vintners Old transaction would comprise a separate claim and should be disposed of as arising in New York under the internal time limitation of that state. Though this transaction was characterized as one of fraud and misrepresentation in the complaint, to apply the same time limitation of New York suggested by defendants for the first transaction, that of six years from the date when discovery should have been made, "sometime in 1947" according to the special finding of the jury, would obviously provide no bar to a suit commenced in 1948. Accordingly, defendants insist that this transaction should be appraised as a separate claim in the nature of a breach of fiduciary duties for waste of corporate assets to which a three year period running from the date of accrual in 1940 would supply a suitable bar.[13]

But the complaint in this case alleged a single wrong of conspiracy. The first issue of fact which the jury necessarily had to resolve in favor of plaintiff and against the defendants before any other issue could be determined at all was whether "there was in fact *a* conspiracy." This question was left to the jury in writing with explicit reference to plaintiff's claim of "one single, overall conspiracy." The general verdict for the plaintiff necessarily involved finding as a fact such single conspiracy. Moreover, counsel for all defendants were in entire accord with the theory of a unitary wrong. When the jury through inadvertence attempted to apportion by amounts among each of the defendants their general verdict for plaintiff, counsel for some of the defendants objected:

---

6. Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.

7. Ruggles v. Keeler, 1808, 3 Johns., N.Y., 263, 3 Am.Dec. 482 per Chancellor Kent; Miller v. Brenham, 68 N.Y. 83.

8. N. Y. Code of Civil Procedure, § 390, effective May 1, 1877.

9. Id. § 390a, added by N.Y.Laws 1902, c. 193; Civil Practice Act, § 13, amended N.Y.Laws 1943, c. 516.

10. N. Y. Civil Practice Act, § 13.

11. Quebec Civil Code, § 2261.

12. N. Y. Civil Practice Act, § 48, subd. 5. See Higgins v. Crouse, 147 N.Y. 411, 416, 42 N.E. 6; Warner v. Republic Steel Corp., D.C.S.D.N.Y., 103 F.Supp. 998, 1009.

13. N. Y. Civil Practice Act, § 49, subd. 6.

"on the grounds that a general verdict in a total amount must be found against any defendants whom the jurors found were engaged in any conspiracy. The jurors have no right to divide up any verdict they find amongst any of the defendants in the case." Counsel for the remaining defendants joined in this objection "on all the grounds stated by Mr. Kiendl and on the further ground that the verdict * * * is not in accordance with the charge * * *."

Upon direction of the court the jury corrected their misapprehension by reporting the same total amount and indicating the defendants against whom it was found but without any division or apportionment as to individual defendants.

The theory of this case is that of a unitary wrong, *viz.*, a civil conspiracy, made actionable by the attainment of two of its objectives, *viz.*, defrauding the plaintiff in the L. L. & B. and Browne Vintners Old transactions. And this theory is not merely a label affixed to two separate claims by plaintiff's pleading. It is a finding of fact by the triers insisted upon by counsel for defendants.

■ Actual discovery of the fraudulent transactions was found by the jury to be respectively May, 1946, for the first transaction and January, 1948, for the second one, and the time when discovery should have been made to be respectively between 1931 and 1932, for the first and sometime in 1947 for the second. In view of plaintiff's claim, explained to the jury by the court, that one of the objectives of the conspiracy was to prevent plaintiff from inquiring into the details of these transactions, and that the conspiracy was a solitary and continuous one, it would be absurd to make the applicable time limitation run from the first and not from the second transaction.[14] Under such circumstances this claim would not be barred by any applicable period of limitation.

But assuming, as defendants insist, that the conspiracy should be ignored and time limitations made to run separately from each of its fraudulent objectives, a different result would not be compelled. It was plaintiff's claim, as the jury was instructed, that part of the consideration in the second transaction to one defendant was for his participation in the first fraudulent transaction. Aside from the impossibility of apportioning the single lump sum found by the jury between each of the two fraudulent transactions, making the appropriate time limitation run from the second transaction, either from the instant of actual discovery or the time when discovery should have been made, would provide no bar to this claim.

## II

Defendants maintain that recovery cannot be had in this case because of the illegality of each transaction: the first relating to the L. L. & B. distillery violated the prohibition laws of the United States; and the second relating to the Browne Vintners Old sale contravened a New York licensing statute[15] because of failure to disclose plaintiff's interest in the Browne company.

■■ With respect to the alleged illegality of the first transaction, the words of Holmes, J., seem apposite: "In the first place, the acts causing the damage were done, so far as appears, outside the jurisdiction of the United States, and within that of other states. It is surprising to hear it argued that they were governed by the act of Congress. * * * A conspiracy in this country to do acts in another jurisdiction does not draw to itself those acts and make them unlawful, if they are permitted by the local law."[16] The distilla-

---

14. See Holmes, J., in United States v. Kissel, 218 U.S. 601, 607–608, 31 S.Ct. 124, 54 L.Ed. 1168; Eldredge v. United States, 10 Cir., 62 F.2d 449, 451.

15. Alcoholic Beverage Control Law, McK. Consol.Laws, c. 3–B, § 110.

16. American Banana Co. v. United Fruit Co., 213 U.S. 347, 355, 359, 29 S.Ct. 511, 512, 53 L.Ed. 826. Although sharply limited by subsequent cases, see Note,

tion of an alcoholic beverage in Canada, lawful there but unlawful in the United States, states no case of illegality so long as the *lex loci delicti* governs, which it does absent special circumstances not here involved, where the tie of citizenship or domicile is sufficient to make American law applicable to the conduct of nationals abroad.[17] But defendants claim that the arrangement between some of them and plaintiff contemplated sale of the distilled product in the United States. Since this arrangement took place in 1931, and repeal of the Eighteenth Amendment in 1933, the triers of fact may have found that acquisition of the Canadian distillery was with a view to sell its products in the United States after repeal. Some regard for minimum standards of potability for the distilled product would certainly support such a finding, and if such was the case, there would be no illegality in the arrangement.[18] On the other hand, assuming *arguendo* that the arrangement was susceptible to the single inference of sale of the distilled product in the United States regardless of repeal, the result might well be the same. Under the Erie doctrine, this forum must pay heed to the public policy of the state in which it sits in a case before it on the basis of diversity of citizenship.[19] Whether or not, under New York decisions, re-

peal of a statute before suit operates retroactively to validate agreements void because against such statute at the time of their making, presents an interesting question of conflict in time.[20] But an arrangement to acquire a distillery in Canada and prepare it for production and ultimate illegal sale of its output in the United States would have fallen far short of even an attempt to violate the prohibition laws. And the remoteness of such preparation is not reduced by consideration of the *malum prohibitum* nature of the end sought to be attained.[21]

■ The illegality of the second transaction allegedly consisted in the failure to disclose plaintiff's interest in Browne Vintners Old. Assuming under the New York licensing statute such interest as plaintiff may have had was required to be disclosed,[22] plaintiff's claim for fraud in the sale of the corporation cannot fairly be characterized as an integral part of the violation.[23] In any event, it was not plaintiff but some of the defendants in control who omitted any disclosure required to be made, and this circumstance significantly distinguishes situations where the claimant himself perpetrated the concealment.[24]

### III

The general release, executed by plaintiff in payment of $250,000 by some of

49 Yale L.J. 1312 (1940), the basic rule of choice of governing law in delictual situations has been adhered to by same Justice speaking for the court in Slater v. Mexican Nat. Ry. Co., 194 U.S. 120, 126, 24 S.Ct. 581, 48 L.Ed. 900, and by the Supreme Court in New York Central R. R. Co. v. Chisholm, 268 U.S. 29, 45 S.Ct. 402, 69 L.Ed. 828.

17. See United States v. Bowman, 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149.

18. Farber v. John Aguino Sons, 253 App. Div. 600, 3 N.Y.S.2d 236.

19. Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481.

20. Cf. Bloch v. Frankfort Distillery Inc., 247 App.Div. 864, 288 N.Y.S. 749, affirmed without opinion, 273 N.Y. 469, 6 N.E.2d 408; Lido Capital Corp. v. Eskel-

sen, 162 Misc. 323, 295 N.Y.S. 163; Lido Capital Corp. v. Vogel, 161 Misc. 48, 291 N.Y.S. 92; *with* Toll v. Friedman, 272 App.Div. 587, 74 N.Y.S.2d 176; Abrams v. Meyerowitz, 175 Misc. 625, 24 N.Y.S.2d 345; Government of the French Republic v. Cabot, 190 Misc. 517, 76 N.Y.S.2d 290. See also United States v. Chambers, 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763.

21. Cf. Holmes, J., in Commonwealth v. Kennedy, 170 Mass. 18, 48 N.E. 770.

22. Alcoholic Beverage Control Law, § 110 subds. 2, 3.

23. See Rosasco Creameries, Inc., v. Cohen, 276 N.Y. 274, 11 N.E.2d 908, 118 A.L.R. 641.

24. Cf. Flegenheimer v. Brogan, 284 N.Y. 268, 274, 30 N.E.2d 591, 132 A.L.R. 613.

272

defendants in May, 1943, pleaded as an affirmative defense, is urged as ground to set aside the verdict. In verbatim conformance with defendants' request to charge, the court instructed the jury that "[U]nless you find that plaintiff executed the release in May 1943 in reliance upon false representations of fact made to him by defendant Reinfeld or on Reinfeld's behalf, with knowledge of their falsity and with the intent that plaintiff should rely on those misrepresentations to his detriment, then plaintiff's claims based upon alleged secret emoluments received by defendant Joseph H. Reinfeld in connection with either L. L. & B. or Browne Vintners, or both, transactions were discharged by the general release. In connection with releases, generally, for instance the one signed in 1943 and the one involving Marco Leon in 1931, bear in mind that such releases are no evidence and no admission of any liability at the time of their execution whatsoever."

In connection with an assignment, not pleaded by defendants, the court in similar conformity with defendants' request to charge instructed the jury that, "[I]f you find that plaintiff in December 1936, freely and knowingly assigned any interest he may then have had in Browne Vintners Old to defendant Reinfeld for $60,000 then you may not consider any secret emoluments received by defendant Joseph H. Reinfeld in connection with the Browne Vintners transaction as the basis of any award to the plaintiff."

■ Since the jury by their general verdict resolved these questions of fact in favor of plaintiff and against defendants, neither the release nor the assignment require that such verdict be set aside as a matter of law.[25]

■ With respect to defendants' contention that the verdict generally is against the weight of the evidence, and that plaintiff has failed to make out a prima facie case, the issues of fact which were left to the jury were ones about which reasonable men might differ under the evidence adduced at trial.

Accordingly, defendants' motions under Rules 50(a), 50(b), Fed.Rules Civ. Proc., are denied.

Judgment for plaintiff on the verdict.

25. See Kirschner v. New Home S. M. Co., 135 N.Y. 182, 189, 31 N.E. 1104.