ERNEST E. GILSON et al., Constituting the Board of Education of Union Free School District No. 22 of Towns of Oyster Bay and Babylon, Plaintiffs, v. JUSTINE L. LAMBERT et al., Defendants.

Supreme Court, Special Term, Suffolk County, July 14, 1954.

*Howard T. Hogan* for plaintiffs.

*Bauso, Clemente & O'Hare* for Mildred B. Kay, defendant.

*Werber & Werber* for Joseph W. Kay, 3d, defendant.

*Hodges, Reavis, McGrath, Pantaleoni & Downey* for Justine L. Lambert, defendant.

*Nathaniel L. Goldstein, Attorney-General,* for the People of the State of New York.

COLDEN, J. Motion by the defendant Lambert for an order directing the Treasurer of Suffolk County to pay over to her $78,500 on deposit with him, which sum represents an award in condemnation proceedings for land taken by the plaintiffs for school purposes. Except for a lien in the sum of $1,000, claimed by one James F. Matthews, the application is opposed solely by the defendant Mildred B. Kay (hereinafter called " Mildred ") who claims to have an inchoate right of dower in part of the land condemned.

The parcel taken by the plaintiffs consists of fifteen acres of land which was part of a larger parcel of approximately fifty-eight acres. These fifty-eight acres were originally owned by

one Frank Lambert and one Joseph W. Kay, each owning an undivided one-half interest. In 1937, Frank Lambert died, leaving his undivided one-half interest to his wife, the defendant Lambert. Joseph W. Kay died on May 15, 1928, and his interest descended to Lillian Kay (hereinafter called " Lillian "), Edith Von Campe and Joseph W. Kay, 3d (hereinafter called " Joseph "), each of whom inherited an undivided one-sixth interest in the fifty-eight acres. Edith Von Campe died on June 26, 1930, leaving her interest to Lillian.

On January 24, 1934, Joseph conveyed his interest to Lillian by a deed in which his wife Mildred joined. This conveyance was recorded on the same date and at that time Lillian then owned an undivided one-half interest. On April 16, 1935, Lillian reconveyed to Joseph an undivided one-sixth interest in the property and on August 9, 1939, Lillian died, leaving her undivided two-sixths interest to Joseph. Thus in August, 1939, Joseph owned an undivided one-half interest in the land.

On May 9, 1950, the defendant Lambert purchased from Joseph his undivided one-half interest in the fifty-eight acres. Mildred did not join in that deed.

When Joseph inherited his one-sixth interest in 1928, it became subject to an inchoate right of dower in favor of Mildred. This right was released by Mildred when she joined in the deed to Lillian in 1934. Inchoate rights of dower were abolished in 1930 (Real Property Law, § 190). Mildred, therefore, did not acquire an inchoate right of dower in this land when Joseph reacquired an undivided one-sixth interest by the deed from Lillian in April, 1935, or when he acquired another two-sixths interest by inheritance from Lillian when she died in August, 1939. Joseph was, therefore, able to convey to the defendant Lambert in 1950, free from dower rights.

Mildred claims, however, that the deed in which she joined in January, 1934, was a fraudulent transfer and not intended to extinguish her right of dower. In her opposing affidavit, she alleges the circumstances surrounding the conveyance to be as follows: " In the early part of January, 1934, my husband was threatened with a lawsuit for damages by one * * * for alienation of his wife's affections. In fact, my husband received a letter from a lawyer representing Mr. * * * demanding damages, stating that an action would be commenced against him if a satisfactory settlement was not made. Mr. * * * was a neighbor of ours, and lived across the street from us at * * * Street, Queens Village. My husband wanted to avoid the possibility of a judgment being obtained

against him, and attaching to this property. He asked me to sign a deed to his interest in this property to his aunt, Lillian Kay, and assured me that it would be a ' dummy ' transaction, made only for the purpose avoiding a possible judgment. He informed me that it was understood by his aunt that she would not be the true owner of the property, and that his aunt would reconvey the property to him as soon as the matter with Mr. * * * had been disposed of. I consented to sign the deed, only upon the above conditions. No consideration was paid by Lillian Kay for the deed, nor was there any intention to defeat me of my dower interests. In order to avoid service of a summons and complaint by Mr. * * *, my husband and I left the State of New York, and took up residence in Coral Gables, Florida. We remained in Florida until passage of a new law by the State of New York outlawing and banning actions for alienation of affections. My attorney informs me that this section of the law is known as Section 61-a. of the Civil Practice Act, and that this section became effective on March 29th, 1935. My best recollection is that we returned from Florida in the early part of April, 1935, shortly after the new law became effective. On April 16th, 1935, according to Mrs. Lambert's affidavit, the property was reconveyed by Lillian Kay to my husband. The Court will note that the sequence of events confirms what I have said concerning this transaction. I did not receive any consideration for my signature on the deed to Lillian Kay; nor was there any consideration given for either of the two aforementioned conveyances. I most certainly did not intend, and did not in fact deprive myself of my dower interest in this property, since Lillian Kay acted at all times as a trustee in this matter."

In a subsequent affidavit, Mildred denies that the deed was fraudulent, stating that the prospective litigant " never instituted any such action against my husband and, of course, never obtained any judgment against him." Having fled the jurisdiction to prevent the recovery of a judgment, it ill behooves Mildred now to advert to the success of her flight.

In any event, there can be no question that the transfer by Joseph in 1934, in which Mildred joined was intended to hinder, delay or defraud the creditors of Joseph. Under such circumstances, the conveyance was fraudulent. (*Pattison* v. *Pattison*, 301 N. Y. 65, 73–74.)

In view of the fact that Mildred joined in the fraudulent intent of Joseph, she will not now be heard to say that she did not intend to deprive herself of her dower rights in the property.

Nor will she be permitted by her fraudulent act to impeach the record title upon which the defendant Lambert relied when she purchased Joseph's undivided one-half interest in 1950.

Mildred argues, however, that the defendant Lambert admitted her dower interest by failing to deny paragraph " 4 " of the complaint in which the plaintiffs herein allege that they were making Mildred a party defendant because of her dower interest in one sixth of the property. This argument is advanced by Mildred in a supplemental affidavit submitted after defendant Lambert's reply affidavit had been filed herein. Said defendant Lambert explains in her brief that Mildred's possible dower rights were not an issue between the plaintiffs and herself; that, that issue arises only now on the question of who is entitled to the award and that she never intended to admit that Mildred was entitled to any rights in the award. Possibly it would have been better practice to have denied the allegation. Pleadings may be amended, however, and the defendant Lambert's answer will be deemed amended to deny said allegation.

Mildred further argues that defendant Lambert had notice of a deed made by Lillian, Joseph and Mildred to the County of Suffolk in 1936. Since Mildred was required to join in that deed, she argues that defendant Lambert should have been on notice and required her signature on the 1950 deed. This does not follow. The fact that another grantee in an excess of caution required signatures which were unnecessary does not bind the defendant Lambert. Neither does it bind this court in making its determination of whether Mildred has any dower interest in this land. This court determines that Mildred extinguished her dower interest by joining in the conveyance of January, 1934.

One further point, not raised by either of the parties, requires discussion here. Section 190-b of the Real Property Law appears to have some relevance to the facts of this case. Said section reads as follows: " § 190-b. *Lands reacquired by the husband.* Lands in which the husband did not have an estate of inheritance on September first, nineteen hundred thirty, and in which the wife did not then have an inchoate right of dower, shall not be subject to dower or an inchoate right of dower if acquired by the husband after said date, although they had been owned by the husband prior to said date." (Added by L. 1940, ch. 541, eff. April 15, 1940.)

At first blush, this statute might seem to imply that under converse circumstances a wife might have an inchoate right of dower in land reacquired by her husband. Such an implication,

however, would run contrary to the consistent trend of legislation enacted during the last quarter of a century.

By chapter 229 of the Laws of 1929, effective September 1, 1930, the Legislature abolished dower. In 1938, the Legislature enacted section 190-a of the Real Property Law enabling an owner of land subject to an inchoate right of dower to maintain an action to have such right extinguished. This very year, a Statute of Limitations was enacted shortening the period within which a widow could commence an action for dower (L. 1954, ch. 486; Real Property Law, § 460).

In the face of this consistent trend of legislation over the last twenty-five years, all designed to abolish, extinguish or limit the right of dower, it can hardly be presumed that the Legislature intended by implication to revive inchoate dower in a few limited cases. Any such intent would have to be evinced by clear-cut definite legislation to that effect rather than by implication from a statute worded in the negative and which literally merely states that dower shall not be allowed in reacquired lands. More likely the legislative intent was to set at rest any doubt that may have been entertained as to whether section 190 of the Real Property Law was broad enough to bar dower in reacquired lands.

In light of the consistent trend of legislation in this State since 1929, this court holds that section 190-b of the Real Property Law was not intended to revive inchoate dower, but rather to make it clear that dower once extinguished was not to be revived.

The motion of the defendant Lambert for an order directing the Treasurer of Suffolk County to pay to her $78,500 now on deposit with him is granted to the extent of directing him to pay to her all but $1,000, which sum he shall hold pending the disposition of the lien claimed by James F. Matthews.