Chief Judge Desmond
(dissenting). I vote to affirm the judgment below because it is an absolutely correct application of an ancient maxim honored and followed by this and other American and English courts in decisions innumerable. Variously articulated (“ex dolo malo non oritur actio ”; “ex turpi causa non oritur actio ”; “ in aequali juri melior est conditio possidentis ’ ’; “pacta quae tur pern causam continent non sunt observanda ”) the maxim means that no right of action can spring from an *288 illegal contract and that courts do not sit to give protection to cheaters or to act “as paymaster[s] of the wages of crime ” (Stone v. Freeman, 298 N. Y. 268, 271). As Justice Johnson explained it for the Supreme Court in 1829, ‘1 no court of justice can in its nature be made the handmaid of iniquity ” or “ become auxiliary to the consummation of violations of law ” (Bank of United States v. Owens, 2 Pet. [27 U. S.] 527, 538, 539). Some of our own recent utterances in the same vein are found in Stone v. Freeman (298 N. Y. 265, 271, supra), Carr v. Hoy (2 N Y 2d 185, 187) and McConnell v. Commonmwealth Pictures Corp. (7 N Y 2d 465, 469).
Despite all these precedents, plaintiff is being awarded a decree which will crown with final success a fraudulent transaction begun by its sole stockholder Jacob Landau in 1934 when he conveyed this same land to his son Alfred Landau, without consideration and in fraud of his creditors. The fraudulent transaction was carried a step further in 1945 when Jacob Landau took bankruptcy proceedings but swore in the schedules that he had no real property. In 1950 son Alfred conveyed the property to son-in-law defendant Chazanof, again without consideration, and Chazanof simultaneously conveyed the land to Jacob Landau’s corporation, plaintiff Seagirt Realty Corporation. The latter deed was never recorded but was lost and plaintiff now asks the court to require the son-in-law to deliver another deed. This a court of equity cannot do without ignoring a whole series of cases typical of which are Flegenheimer v. Brogan (284 N. Y. 268), O’Connor v. O’Connor (288 N. Y. 579) and Pattison v. Pattison (301 N. Y. 65). The essential facts in Flegenheimer are indistinguishable from those proven here. Plaintiff’s intestate Arthur Flegenheimer owned a brewery but put it in the name of a corporation and turned the stock over to one Vogel to conceal Flegenheimer’s ownership from Federal and State authorities who would not give Flegenheimer permits. Vogel turned the stock over to defendant Brogan. After Flegenheimer’s death his administratrix sued for the value of the stock. The Court of Appeals described the action as “ one brought by an alleged secret owner to vindicate his assertion of beneficial title to property he had parted with in order to perpetrate a fraud upon the statute which regulates and controls traffic in alcoholic beverages.” The plaintiff made the *289 same argument (see 284 N. Y. 268, 272) as does plaintiff here, namely that the transaction whereby defendant got the stock was different from the alleged illegal first transaction. This court through Judge Loitghbaít made this answer: 1 ‘ But our primary concern is not with the position of the defendant. The immediate question is whether on the presently admitted facts a recovery by the plaintiff should be denied for the sake of public interests. This is a question of public policy in the administration of the law. ‘ The principles of public policy remain the same, though the application of them may be applied in novel ways. The ground does not vary. As it was put by Tindal, C. J., in Horner v. Graves (7 Bing. 735, 743), 1 ‘ Whatever is injurious to the interests of the public is void, on the grounds of public policy.” ’ (Naylor, Benzon & Co. v. Krainische Industrie Gessellschaft, [1918] 1 K. B. 331, 342, 343.) ”
The Pattison case (301 N. Y. 65, 73, supra) was one where a grantor was, just like this plaintiff, trying to get back property transferred in fraud of creditors. We held that the general rule that the courts would extend no remedy to such a grantor “ * is too well settled to be now called in question. ’ ”
Of course, all this goes back long before Flegenheimer (see, for instance, Schermerhorn v. Talman, 14 N. Y. 93, 141 [1856]). We said in 1932 in Reiner v. North Amer. Newspaper Alliance (259 N. Y. 250, 256) that this “ [clean hands] defense is allowed not as a protection to a defendant, but as a disability to the plaintiff.” In McConnell v. Commonwealth Pictures Corp. (7 N Y 2d 465, 469-472, supra) we went all over the ground again tracing the rule as far as the statement in Riggs v. Palmer (115 N. Y. 506, 511) that the courts will not let a plaintiff “ profit by his own fraud, or * * * take advantage of his own wrong, or * * * found a claim upon his own iniquity, or * * * acquire property by his own crime.” We said something else in McConnell (p. 470) that is applicable here: “ We are not working here with narrow questions of technical law. We are applying fundamental concepts of morality and fair dealing not to be weakened by exceptions.” Today, ignoring that warning, we are seriously weakening an old, good rule of law and morality, essential for the integrity of the courts themselves.
The judgment should be affirmed, with costs.