ELLA SOBEL et al., Respondents, *v.* CITY OF NEW YORK et al., Appellants. CONSOLIDATED TELEGRAPH AND ELECTRICAL SUBWAY Co. et al., Appellants-Respondents, et al., Defendants.

First Department, November 17, 1959.

272

*Fred Iscol* of counsel (*Seymour B. Quel* with him on the brief; *Charles H. Tenney, Corporation Counsel,* attorney), for City of New York, appellant.

*James J. McLoughlin* of counsel (*Anthony J. De Cicco,* attorney), for W. J. Fitzgerald Paving Co., Inc., appellant.

*Leonard Hemley* of counsel (*Robert G. Sheller* and *Morris L. Wolf* with him on the brief; *Thomas P. Curtin,* attorney), for Consolidated Telegraph and Electrical Subway Co., appellant-respondent.

*George J. Conway* for Slattery Rock Corporation, appellant-respondent.

*Moe Levine* of counsel (*Max Shamis* with him on the brief; *Levine & Baker,* attorneys), for Ella Sobel and another, respondents.

McNALLY, J. In this action for personal injuries, involving cross complaints among the defendants, a verdict for $60,000 was rendered in favor of plaintiff Ella Sobel and for the sum of $10,000 for loss of services and medical expenses in favor of her husband Morris Sobel.

The jury's verdict in favor of the plaintiffs was against the City of New York, Consolidated Telegraph and Electrical Subway Co. and Slattery Rock Corporation.[*] By consent of the parties the issues of the cross complaints of the city and Consolidated were submitted to the trial court for disposition. The trial court dismissed the city's cross complaint against Consolidated and Slattery; dismissed the cross complaint of Consolidated against Slattery and gave judgment to Consolidated on its cross complaint against Fitzgerald.

The occurrence giving rise to this action resulted from a street opening in respect of which Consolidated was the permittee, and Slattery and Fitzgerald were, respectively, street opener and paver under subcontracts with Consolidated.

---

[*] Plaintiffs discontinued the action against Slattery Contracting Co., Inc. and at the close of plaintiffs' case the court dismissed the plaintiffs' complaint against W. J. Fitzgerald Paving Co., Inc. and Consolidated Edison Company of New York, Inc. The defendants Consolidated Edison Company of New York, Inc. and Slattery Contracting Co., Inc. are not concerned with this appeal.

On May 18, 1956, the plaintiff Ella Sobel, while crossing at the crosswalk at the northwest corner of Third Avenue and East Tremont Avenue, Borough of Bronx, was caused to fall and sustain the injuries complained of when her foot struck an obstruction. The obstruction consisted of uneven cobblestones raised about six or seven inches above the surrounding surface.

On January 11, 1956, a permit was issued by the president of the Borough of Bronx to the defendant-appellant-respondent Consolidated Telegraph and Electrical Subway Co. for the opening of an area of Third Avenue, inclusive of the site of the occurrence. The permit by virtue of extensions thereof was in force on May 18, 1956. The following condition, among others, was set forth in said permit: "In all cases where any person shall perform any of the work mentioned in the preceding section, either under contract with the city or by virtue of permission obtained from any department, board or officer of the city, such persons shall be answerable for any damage which may be occasioned to persons, animals or property by reason of carelessness in any manner connected with the work." The quoted provision is substantially in accord with the provisions of section 82d–4.0 of the Administrative Code of the City of New York.

On November 21, 1955 and April 6, 1956, permits were issued to Consolidated by the Commissioner of Water Supply, Gas and Electricity for the construction and installation of electrical conduits at and in the vicinity of the site of the occurrence. Condition 17 of each of the said permits provides as follows: "Permits issued to the several companies are issued upon the expressed conditions that the permittee assures the City of New York that it has complied with the requirements of the Workmen's Compensation Law and has made further adequate and proper arrangements to indemnify and hold the City of New York harmless from all damages and costs by reason of injury to persons or property, caused by acts of omissions of the grantee, its agents or employees arising directly or indirectly from any work done under this permit and from opening of the pavements, from street obstructions or failure to light such obstructions, or to guard excavations, embankment and bridges, or from failure to repair the pavement disturbed by the grantee to the satisfaction of the official having jurisdiction. The Commissioner may in his discretion require the grantee to furnish a bond in such sum as he may designate, to indemnify and save harmless the City from all damages and costs in this section referred to."

On November 25, 1955, Consolidated entered into a contract with defendant-appellant-respondent Slattery Rock Corporation whereby Slattery engaged to excavate the trench at the site of the occurrence, lay the conduits, backfill the excavation and temporarily replace the cobblestones. Prior thereto and on July 5, 1955, Consolidated had entered into a contract with defendant-appellant W. J. Fitzgerald Paving Co., Inc. whereby for the period of one year ending June 30, 1956 Fitzgerald was to pave roadways permanently upon order from Consolidated.

Slattery's contract provided, in part, as follows: " PORTION OF VI. The Contractor shall continue to maintain trenches and openings after they have been backfilled, or have been backfilled and surfaced with temporary pavement, until 10 days after the Contractor has notified the Company *in writing* that the condition of the trench is satisfactory for the restoration of the permanent pavement, or until permanent pavement has been restored, whichever is earlier."

Fitzgerald's contract provided, in part, as follows: " 8. After openings have been backfilled by the Company or its contractors, the Company will issue a Paving Order to the Contractor. The Contractor shall assume all responsibility and shall perform all work necessary for the proper maintenance of such openings from forty-eight (48) hours after receipt of the Paving Order, or from the time the Contractor starts work, whichever is earlier, until such time as the permanent paving has been installed. The Contractor shall assume all responsibility and liability for any injuries to persons or damages to property resulting from such Company openings from forty-eight (48) hours after receipt of the paving order, or from the time the Contractor starts work, whichever is earlier, until such time as the permanent pavement has been restored. The Contractor shall reimburse the Company for all costs which it may incur during the time of the Contractor's assumption of responsibility."

The evidence establishes that Slattery had completed its work on April 20, 1956, and that Consolidated, on April 24, 1956, had measured the work performed by Slattery in order to establish the amount due and payable to Slattery; that on May 1, 1956 Consolidated issued its order to Fitzgerald to proceed with the permanent paving at the site of the occurrence.

Implicit in the jury's verdict in favor of the plaintiffs is the finding that plaintiff Ella Sobel tripped over a cobblestone raised six or seven inches above the surrounding surface. The evidence also enabled the jury to find that the condition complained of had existed for " at least a whole month " prior

to the occurrence. This condition at the time of the occurrence was established by the testimony of plaintiff Ella Sobel, an eyewitness, and a police officer of the City of New York who reported the occurrence. The eyewitness testified as follows: " [S]he [plaintiff Ella Sobel] tripped on the stone, what was sticking out from the sand, and they were all loose, about three feet wide, which I go by there every other day to go in the park with the dog, and it has been this way at least a whole month, loose, and it just happened, going by so many times".

Consolidated, having applied for and received the permits, assumed the general obligation of the defendant-appellant City of New York safely to maintain the area involved. Although the city was under a nondelegable duty to maintain its streets in good condition, it was privileged to, and under the facts of this case did, require Consolidated to assume its burden with respect to maintenance, although that could not relieve the city of its obligation to plaintiffs. (*Doyle* v. *Union Ry. Co.*, 276 N. Y. 453; *Burke* v. *City of New York*, 2 N Y 2d 90.) The record amply supports the jury's verdict for the plaintiff against the City of New York and Consolidated.

The court's charge, as amplified by additional instructions, also enabled the jury to find Slattery liable to the plaintiffs because either Slattery created the condition, or Slattery omitted or failed to maintain the trench at the site of the occurrence for a reasonable period after Slattery had backfilled and before Fitzgerald had commenced to pave. It is clear that if Slattery had created the condition complained of it would be liable to the plaintiffs. (*Brown* v. *Welsbach Corp.*, 301 N. Y. 202.) However, if the condition was not created by Slattery and its liability depends on its obligation to maintain safely the trench at the site of the occurrence, then in the absence of such obligation the verdict against Slattery must be set aside.*

Slattery, however, by its contract with Consolidated, had agreed to maintain the trench it had backfilled until 10 days

* This result would follow from the principle that a verdict may not stand if it rests on several bases of liability, one of which is legally untenable. (*Morgan* v. *Robinson*, 3 A D 2d 216; *McCarthy* v. *Troberg*, 275 App. Div. 139, 142; *McAndrew* v. *5905 Broadway Realty Corp.*, 282 App. Div. 757; *Sharick* v. *Marvin*, 1 A D 2d 284, 287.) Thus, under the circumstances of this case, there would have been no duty on the part of Slattery to maintain the trench after it had performed its work, except as it assumed to maintain it by its contract with Consolidated. (*Brown* v. *Welsbach Corp., supra*; *Weis* v. *Long Is. R. R. Co.*, 262 N. Y. 352; *Bergen* v. *Fortis Contr. Co.*, 270 App. Div. 1036, affd. 297 N. Y. 856; *Probst* v. *New York Cent. R. R. Co.*, 237 App. Div. 562; *Kalas* v. *Consolidated Tel. & Elec. Subway Co.*, 211 App. Div. 280, affd. 240 N. Y. 633; *Coleman* v. *Guidone & Son*, 192 App. Div. 120.)

after it had notified Consolidated in writing that the trench was satisfactory for restoration of the permanent pavement. Slattery failed to notify Consolidated in writing. Nevertheless, it is uncontradicted that Slattery had backfilled on April 20, 1956, and that Consolidated had actual knowledge that the trench was ready for permanent pavement no later than April 24, 1956. In any event, by May 1, 1956, Consolidated ordered Fitzgerald to proceed with the permanent pavement.

Slattery might have defended against the plaintiffs by asserting a waiver by Consolidated of the requirement of written notice of completion of its work and a course of conduct establishing a limitation upon its contractual obligation of maintenance to a period expiring 10 days after its giving of the order to pave or the receipt thereof by Fitzgerald. Slattery also might have urged alternatively a waiver by Consolidated of the written notice of its completion of the work and the substitution by implication of an undertaking by Slattery to maintain for a reasonable period after the completion of its work. The court's main charge adopted and submitted to the jury the latter theory of liability on the part of Slattery as follows: "Slattery was under a duty after putting in the conduits to backfill properly and to see that the refill and temporary paved opening was maintained or safeguarded in a reasonably safe condition for a reasonable period of time thereafter, or until actual permanent pavement was accomplished. What do you find the true fact to be? A violation of duty on the part of Slattery would, of course, be negligence."

No exception was taken by Slattery or any of the parties to the said charge. In fact, Slattery thereafter requested charges which, although refused, adopted and incorporated the concept of Slattery's obligation to maintain for a reasonable time after the completion of its work. It was within the competence of the parties to go to the jury on the issue of Slattery's obligation to maintain for a reasonable period of time after the completion of its work despite the provisions of the contract between it and Consolidated. (*Pattison* v. *Pattison*, 301 N. Y. 65, 68; *Farmers' Loan & Trust Co.* v. *Housatonic R. R. Co.*, 152 N. Y. 251, 254; *Fallon* v. *Lawler*, 102 N. Y. 228, 233; *Gillies* v. *Manhattan Beach Improvement Co.*, 147 N. Y. 420, 423–424.) Under these circumstances, the court's refusal to comply with the request of the jury to make available to it the contract provisions relative to the duration of Slattery's obligation to maintain and the court's reiteration of Slattery's obligation to maintain for a reasonable time, theretofore acceded to by Slattery, do not constitute error, and we affirm the jury's verdict in favor of the plaintiffs against Slattery.

The City of New York is entitled to judgment against Consolidated and Slattery on its cross complaint. (*Doyle* v. *Union Ry. Co.*, 276 N. Y. 453, *supra*; *Burke* v. *City of New York*, 2 N Y 2d 90, *supra*.) Under the circumstances of this case, the knowledge, if any, of the city, of the street condition was constructive and was not such acquiescence therein as to discharge the primary tort-feasor for injuries caused by it. (*Putvin* v. *Buffalo Elec. Co.*, 5 N Y 2d 447, 458; *Ruping* v. *Great Atlantic & Pacific Tea Co.*, 283 App. Div. 204, 206.)

We conclude also that Consolidated is entitled to indemnity from Slattery. We are of the opinion that the contract between Consolidated and Slattery, in the light of Slattery's obligation to maintain, provides for indemnity in the circumstances despite the omissions of Consolidated. When the intent to so indemnify is clear, the right thereto will be sustained and enforced despite concurring omissions on the part of the indemnitee. Slattery covenanted to indemnify Consolidated from all liability arising from injury to person or property " occasioned *wholly or in part* by any act or omission of " Slattery. It is patent that Slattery's was the duty of maintenance at the time of the occurrence as found by the jury and that its omission in maintenance was causally related to the occurrence. The injuries to plaintiffs therefore were " occasioned *wholly or in part* by [an] act or omission of " Slattery, and the events which, by the provisions of the contract between them, were to give rise to indemnity from Slattery to Consolidated, on this record, did materialize. Implicit in Slattery's undertaking to maintain was the absence of any such duty on the part of Consolidated as between them. While the trial court found otherwise, nevertheless, on the facts, we find there was no omission on the part of Consolidated, within the meaning of the provision for indemnity, contributing to plaintiffs' injuries.

Fitzgerald, under the provisions of its contract with Consolidated, assumed the obligation of maintaining the backfilled trench from 48 hours after the receipt of the paving order which was issued by Consolidated on May 1, 1956 and received by Fitzgerald within a day or two thereafter. Fitzgerald's obligation to Consolidated does not depend solely on the common-law obligation to indemnify; it is on this record also contractual and grounded on its covenant to maintain together with its express assumption of responsibility and liability for any injuries to persons resulting from the condition. (*Burke* v. *City of New York*, 2 N Y 2d 90, *supra*; *Mirsky* v. *Seaich Realty Co.*, 256 App. Div. 658.) Nor are we here concerned solely with an omission in respect of a contract to repave. Fitzgerald

also assumed "all responsibility and [to] perform all work necessary for the proper maintenance of such openings from forty-eight (48) hours after receipt of the Paving Order". In addition, Fitzgerald assumed "all responsibility and liability for any injuries to persons or damages to property resulting from such Company openings from forty-eight (48) hours after receipt of the paving order"*.

The custom and practice relied on by Fitzgerald, whereby Consolidated allegedly countenanced the delay and waived performance within the time provided by their contract, presented issues of fact which were resolved against Fitzgerald. The evidence thereon was not persuasive and in its aspect most favorable to Fitzgerald suggests there were delays in paving on its part and failure to object on the part of Consolidated. The evidence falls far short, however, of establishing waiver on the part of Consolidated of Fitzgerald's obligation to maintain the backfilled street opening here involved commencing 48 hours after receipt of the paving order and continuing until it had repaved.

We have considered the other assigned errors and find they are without merit.

The part of the judgment in favor of the plaintiffs and against the defendants-appellants the City of New York, Consolidated Telegraph and Electrical Subway Co. and Slattery Rock Corporation should be affirmed.

The judgment as to the cross complaint of the defendant-appellant the City of New York should be reversed, on the law, the dismissal vacated and judgment directed for the city against the defendants-respondents Consolidated Telegraph and Electrical Subway Co. and Slattery Rock Corporation.

The judgment as to the cross complaint of the defendant-appellant Consolidated Telegraph and Electrical Subway Co. against defendant-respondent Slattery Rock Corporation should be reversed, on the law and on the facts, the dismissal vacated and judgment directed against the said defendant-respondent.

The part of the judgment in favor of the defendant-respondent Consolidated Telegraph and Electrical Subway Co. and against defendant-appellant W. J. Fitzgerald Paving Co., Inc. should be affirmed, with costs to all prevailing appellants and respondents.

---

* The said contract does not lessen the nondelegable obligation to the public of Consolidated to safely maintain. On the contrary, it serves to enlarge the class charged with the duty of safe maintenance and is thus compatible with and further assures the safety of the public.

RABIN, J. (dissenting in part). I concur in the result reached by the majority of the court with the exception that I would not grant judgment in favor of Consolidated Telegraph and Electrical Subway Co. on its cross claim against Fitzgerald Paving Co., Inc. Fitzgerald Paving Co., Inc. was not guilty of negligence of any kind. At the time of the accident it had not yet commenced work, nor had it taken control of the premises. Assuming that the facts support the conclusion that there was no waiver by Consolidated Telegraph, at most we have a breach of contract on the part of Fitzgerald for failure to pave at the time required by the contract. Any recovery against Fitzgerald may only be had for such breach. Ordinarily, in a contract such as this, damages would be the difference between the contract price and the market value of the work. However, consequential damages may be awarded where those consequences were within the contemplation of the parties and could not be avoided by the party aggrieved. Thus, in the case of a contract of sale of merchandise not obtainable on the market at the time of the breach, if the parties knew that the failure to deliver would result in a loss to the purchaser because he would then be unable to fulfill contracts made in contemplation of receiving the goods, he would be entitled to recover the loss of profits as consequential damages. However, if the merchandise could have been purchased on the open market in time for the purchaser to meet his commitments he could not claim consequential damages. Such damages would be the result, not merely of the breach, but of the purchaser's failure to obtain the goods on the market. Moreover it becomes the duty of one aggrieved as the result of a breach of contract to make reasonable attempts to mitigate damages.

And so in this case it may not be said that the injuries sustained by the plaintiff were the proximate consequences of the failure of Fitzgerald to repave on time. Rather, the accident was a direct consequence of the failure of Consolidated Telegraph to remedy the condition then existing, or to take other means to safeguard pedestrians. It may well be that if Consolidated Telegraph had not been in control of the premises at the time of the accident, but depended on performance by Fitzgerald it could then be said that the accident was a consequence of Fitzgerald's breach of contract. The evidence, however, clearly shows that up to the time of the accident Consolidated Telegraph or its agent Slattery was in full control of the premises to the exclusion of Fitzgerald, which had not yet arrived to do its work. Having been itself in control, or in control through its agent Slattery, for whose acts it is chargeable, Consolidated Telegraph could not stand idly by and allow a dangerous condition to exist merely because it had a contract to repave. Even

if there was a breach of contract on the part of Fitzgerald, Consolidated Telegraph owed Fitzgerald a duty to take reasonable steps to prevent the aggravation of damages if it was within its power to do so. Here, not only was it within its power to do so, but that was its obligation to the public as well as to Fitzgerald.

Quite apart from its legal obligation it would appear to be against public policy to allow Consolidated Telegraph to recover in a situation as is here presented. It is in the interest of the public that dangerous conditions be immediately remedied. To sustain Consolidated Telegraph's cross complaint against Fitzgerald would in effect be condoning Consolidated Telegraph's conduct in standing by and permitting the dangerous condition to continue with its potential of injury to the public. Such disregard for the public interest should be discouraged. It certainly ought not be encouraged as it would be by the decision to hold in Fitzgerald.

Accordingly, I dissent in part and vote to dismiss the cross complaint of Consolidated Telegraph and Electrical Subway Co., against Fitzgerald Paving Co., Inc.

BREITEL, J. P., VALENTE and STEVENS, JJ., concur with McNALLY, J.; RABIN, J., dissents in part, in opinion.

Resettled judgment appealed from modified as follows: (a) that part of the judgment in favor of the plaintiffs and against defendants-appellants the City of New York, Consolidated Telegraph and Electrical Subway Co. and Slattery Rock Corporation is affirmed; (b) the judgment as to the cross complaint of the defendant-appellant the City of New York is reversed, on the law, the dismissal vacated and judgment directed for the city against defendants-respondents Consolidated Telegraph and Electrical Subway Co. and Slattery Rock Corporation; (c) the judgment as to the cross complaint of the defendant-appellant Consolidated Telegraph and Electrical Subway Co. against defendant-respondent Slattery Rock Corporation is reversed, on the law and on the facts, the dismissal vacated and judgment directed against the said defendant-respondent; and (d) that part of the judgment in favor of the defendant-respondent Consolidated Telegraph and Electrical Subway Co. and against defendant-appellant W. J. Fitzgerald Paving Co., Inc. is affirmed, with costs to all prevailing appellants and respondents.

Settle order.