Louise F. ROOT, Petitioner,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

No. 14151.

United States Court of Appeals,
Ninth Circuit.

March 7, 1955.

Henry W. Howard, San Francisco,
Cal., for appellant.

H. Brian Holland, Asst. Atty. Gen.,
Karl Schmeidler, Atty., Dept. of Justice,
Washington, D. C., Joseph F. Goetten,
Ellis N. Slack, Lee A. Jackson, Special
Assts. to Atty. Gen., Daniel A. Taylor,
chief counsel, Internal Revenue Service,
Washington, D. C., for appellee.

Before HEALY and CHAMBERS, Cir-
cuit Judges, and WIIG, District Judge.

HEALY, Circuit Judge.

This case is here on petition to review
a decision of the Tax Court upholding a
deficiency assessment in respect of peti-
tioner's income tax for the year 1945. In
her return for that year petitioner claim-
ed a deduction of $12,910.20 assertedly
representing unrecoverable loans to the
Washington Hills Quicksilver Corpora-
tion. The Commissioner disallowed the
deduction on the ground that the amount
claimed was not a bad debt but a capital
investment subject to the limitations of
§ 117(d) (2) of the Internal Revenue
Code, 26 U.S.C.A. § 117(d) (2).

The evidence before the Tax Court,
partly oral and in part stipulated, we
summarize as follows: The Washington
Hills Quicksilver Corporation was or-
ganized in 1942 by petitioner and her
husband and one Mr. Levison. Petition-

er and her husband were entitled to receive 50 per cent of the corporate stock authorized to be issued. Petitioner, who appears to have a substantial income from a trust fund left her by her family, made the advances in question for the purpose of buying mining machinery and equipment and for labor costs.[1] These advances were entered in the corporation's books as loans. The advances were not secured, no interest thereon was to be paid by the corporation, and they were not evidenced by promissory notes. In her testimony before the Tax Court the petitioner made among others, certain statements which in our opinion shed important light on the thought and intent of the incorporators. She said: "I put in cash, my husband put in his ability as a mining engineer, and Mr. Levison put in his work, * * *" As regards preferred stock provided for in the articles she said that the plan was that " * * * the preferred stock would be put on sale to the general public. And out of the profits of that sale, if there were any sales, I was to have paid back to me any money which I advanced to the corporation. It was also agreed that any net profit that came out of the operation of the corporation I should be paid back in cash before there were any dividends or anything like that paid." We may add at this point that no stock was issued to the incorporators and none sold to the general public.

Mining operations were begun in 1942 and ceased the same year when the high government price support for quicksilver was removed. The price of quicksilver fell sharply from $280 per flask to between $50 and $60 per flask. Naturally no profits were realized from the mining operation. The mining equipment was sold in 1943, and thereafter the corporation sought to interest others in the property. In 1944 a contract of sale was entered into with one Sullivan, pursuant to which the latter brought in equipment of his own. In the spring of 1945 Sullivan removed his equipment and notified the corporation that he had abandoned the property. Sullivan made no payments under his contract and no further efforts were made by the corporation to effect a sale.

The Tax Court found that petitioner's advances were not loans furnishing a proper basis for deduction as bad debts under § 23(k) of the Internal Revenue Code, 26 U.S.C.A. § 23(k), but were capital contributions. Assuming arguendo that the advances were not capital contributions, the Court concluded that petitioner had failed to sustain her burden of proving that the debt became worthless in the taxable year 1945. We do not reach the latter finding since we are of opinion that the finding on the first issue was not error.

A good statement of the distinction between an individual's advances to a corporation as creditor and his advances to a corporation as stockholder is to be found in the decision of the Seventh Circuit in Commissioner of Internal Revenue v. Meridian & Thirteenth Realty Co., 132 F.2d 182, 186, to the following effect: "It is often said that the essential difference between a creditor and a stockholder is that the latter intends to make an investment and take the risks of the venture, while the former seeks a definite obligation, payable in any event." The observation was quoted with approval in Wilshire & West. Sandwiches v. Commissioner, 9 Cir., 175 F.2d 718, 721. And in Schnitzer v. Commissioner, 13 T. C. 43, 62—a decision affirmed by the Ninth Circuit in 183 F.2d 70—it was remarked: "A corporation's financial structure in which a wholly inadequate part of the investment is attributed to stock while the bulk is represented by bonds or other evidence of indebtedness to stockholders is lacking in the substance necessary for recognition for tax purposes, and must be interpreted in accordance with realities."

---

1. She advanced also the sum of $8,800 to cover the purchase price of the real property acquired, receiving therefor a promissory note of the corporation in that amount. This advance is not in issue here.

Speaking generally, the problem whether advances to a corporation by a stockholder are loans or whether they are capital contributions presents a question of fact. Earle v. W. J. Jones & Son, 9 Cir., 200 F.2d 846. Being of opinion that the Tax Court's finding on the subject is amply supported, we affirm its judgment.