UNITED STATES of America, Plaintiff,

v.

**PLASTIC ELECTRO–FINISHING CORPORATION and Planet Plating Company, Inc., Defendants.**

No. 68–C–731.

United States District Court, E. D. New York.

April 15, 1970.

The Court will not long linger over the transaction which found in 1962 the predecessor Planet supplanted by the successor entity Plastic in the conduct of the selfsame business. The two closed corporations, the stock of which was held in equal ownership by two individuals, Sherman and Collin, who occupied the same official positions in both corporations and performed identical business functions for each, were successively engaged in the same business, at the same premises and with the same physical plant dealt with and supplied the needs of the same customers.

The point in time at which Planet was "abandoned" and Plastic took over was March 1, 1963. The method by which the transition was effected was a less than arms-length transaction under which Plastic paid Planet $9,033* and took over from Planet its accounts receivable, ($63,145), inventory, ($9,244), interest in Plye Ed Dor Realty Co. ($4,465), and machinery and equipment, ($8,553), and a few other miscellaneous items approximating $1,700. The transferee Plastic simultaneously assumed liabilities, of which the largest were accounts payable, ($41,559), and loans payable to the two principals in the corporations, (Collin, $15,603; Sherman, $15,259). Reserves for bad debts and trade allowances, ($5,398), and a note liability, ($246), comprised the remaining liabilities assumed.

The check given to Planet by Plastic to seal the transaction equalled the net difference, ($9,033), between the total assets ($87,098) taken over and the selected liabilities assumed, ($78,065).

It is at once noted that in this transfer not only does the asset value if realized upon at the amounts assigned in the Planet-Plastic agreement exceed by $9,033 the total of all liabilities assumed but if the Collin and Sherman loans payable by Planet were treated as capital investments in that company, which conceivably they were,[1] the transferred ac-

Edward R. Neaher, U. S. Atty. Eastern District of New York, for plaintiff; John S. Kingdon, Trial Attorney, Department of Justice, of counsel.

Kamerman & Kamerman, New York City, for defendants; Jerome Kamerman, New York City, of counsel.

ROSLING, District Judge.

The fraudulent intent of defendants to defeat the government's claim for unpaid income taxes, interest and penalties for the years 1955 and 1956 owing by Planet Plating Company, Inc. ("Planet") and the utter lack of business purpose in the transfer of Planet assets to Plastic Electro-Finishing Corp. ("Plastic") constituting such fraud are so manifest that the Court is at a loss to determine from the evidence whether the defendants' contest of so obviously valid a claim as plaintiff's is motivated by a bona fide myopia or by a less innocuous purpose to delay the creditor government while some civil or, possibly, criminal statute of limitations expires.

* Pennies are dropped from all dollar figures.

1. Litigation in the tax field where the issue is whether a payment by a stock-

counts receivable alone could easily satisfy in full all other obligations taken over, with a substantial surplus of assets remaining above the liabilities thus paid.

Left behind in Planet for payment by that company were some small bills totaling $342, and large unsatisfied claims for governmental taxes. These residual obligations of Planet, as evidenced by checks of Planet issued after March 1, 1963, presumably drawn against the $9,033 Plastic check to Planet were the Federal and New York State taxes, set forth below:

| | |
|---|---|
| Manufacturers Hanover payroll taxes for Planet | $2,048 |
| Social Security | 64 |
| Unemployment Insurance | 690 |
| Social Security and Withholding | 948 |
| Federal Income Tax—1961 | 584 |
| Federal Income Tax on account of year ended June 30, 1955 | 2,887 |

What had precipitated the Planet-Plastic metathesis was an overhanging liability for Federal income tax deficiencies against Planet for the taxable years ended June 30, 1955 and 1956. These liabilities included claims for civil fraud penalties and interest. As of March 1, 1963, review of the deficiencies at the instance of Planet as taxpayer was pending in the Tax Court, petition for review having been filed on July 2, 1962. A conference by Planet with the Internal Revenue Service respecting such liability was held on December 18, 1962, the month before the incorporation of Plastic. Further conferences were conducted on May 20, and June 7, 1963. The last two dates mentioned followed the commencement by Plastic of its business on March 1, 1963. Shortly thereafter on October 1, 1963, Planet stipulated in the Tax Court in the action it had brought, for a decision against it determining deficiencies, including an award of fraud penalties, and on November 8, 1963, assessments for unpaid balances for the years ending June 30, 1955 and 1956 were duly filed by the government. These totalled $64,712.[2]

The assessments for deficiencies in income taxes for the years in question appear to have had some relationship to the indictment in 1958 and conviction in 1959 of Planet, Sherman and Collin in a joint indictment in this court of an offense under 50 U.S.C. App. Section 2073, in ordering or selling nickel anodes. All three defendants were fined in substantial amounts.

At all events, at the beginning of 1963, when the two individuals engaged in their Planet-Plastic metamorphosis, they knew full well that they had no defense to an imminent tax deficiency assessment against Planet of a sum in excess of $60,000 and interest.

Turning now to the mathematics of the transaction, it is at once apparent that if Planet had been permitted to go into bankruptcy, the government as a preferred creditor (Bankruptcy Act, § 64(a) (4), 11 U.S.C. § 104(a) (4); Rev. St. § 3466, 31 U.S.C. § 191. Cf. United States v. Key, 397 U.S. 322, 90 S.Ct. 1049, 25 L.Ed.2d 340 (1970) ), would have been enabled to collect its claim in full. If without bankruptcy and preference the government had shared pro rata in the assets of the company it would have been entitled to receive about 50% of its claim, with its aliquot share considerably enhanced if the Sherman and

holder or in his behalf to his corporation is a loan to the corporation or a capital contribution is plentiful with the rulings turning largely on the facts in a framework of legal principles. See, e. g., Tyler v. Tomlinson, 414 F.2d 844, 847 (5th Cir. 1969); Ortmayer v. Commissioner of Internal Revenue, 265 F.2d 848, 854 (7th Cir. 1959); Root v. Commissioner of Internal Revenue, 220 F.2d 240, 241 (9th Cir. 1955). See also comment in 2 G. Hornstein, Corporation Law and Practice § 906 (1959); 1 F. O'Neal, Close Corporations § 2.10 (1958, Supp.1969); and 5 J. Mertens, Law of Federal Income Taxation § 28.38 (Revision 1969, Supp. Jan.1970), particularly page 174 of text and footnote 92.

2. With interest the assessment balance as of October 8, 1969, totalled $81,563. Interest continues to accrue at 6% per annum at the rate of $8.01 per diem.

Collin claims for moneys "loaned" the corporation had been relegated to the status of a capital interest.

By their eclectic bookkeeping approach, however, these controlling stockholders have, hopefully, produced a situation which has preferred certain creditors, including themselves, who receive 100 cents on the dollar of their claims, whereas the United States, sitting below the salt, has realized from the abandoned Planet but $2,887 on its $80,000 plus fraud claim for deficiency in income tax payment, and has no prospect of ever collecting anything additional unless it prevails in this action.

The point need not be further labored by discussing the blatant circumstance

that Sherman and Collin, prospering enormously since the successor Plastic was so solvently established, neglected to take into financial account that the purchase price bid for a going enterprise should, if the sale is fairly conducted, substantially exceed the market price of the assets when sold under the hammer at auction to be carted away.[3]

■ It is the Court's conclusion that the transfer challenged by the United States is void for actual and intended fraud of creditors and was at most a paper transaction, accomplishing nothing.[4]

■ Plaintiff is entitled to judgment against Plastic and Planet[5] in the sum

3. One also wonders how much of the 5% reserve for bad debts ($3,202), to say nothing of the reserve for "trade allowances," ($2,196), was actually applied by Plastic in the period subsequent to March 1, 1963, because of inability to collect the $64,000+ of accounts and notes receivable transferred ·to it by Planet.

4. N.Y. Debtor and Creditor Law, McKinney's Consol.Laws, c. 12, § 276 (McKinney 1945) declares that every conveyance made with *actual* intent to defraud is fraudulent. It reads: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." "Conveyance" as defined in § 270 of the law includes transactions of the subject type. "A conveyance is fraudulent when the grantor, even though solvent, is motivated by an intent to hinder, delay or defraud his creditors." Pattison v. Pattison, 301 N.Y. 65, 73, 92 N.E.2d 890, 895 (1950). The status of the debt as reduced to judgment, or inchoate, or even as nonexistent at the time of the fraudulent transfer is immaterial. § 276 protects future as well as present creditors. See In re Rosenfield's Will, 213 N.Y.S. 2d 1009, 1015 (Surrogate's Court 1961), aff'd without opinion, 18 A.D.2d 718, 236 N.Y.S.2d 941 (1962); Citizens' National Bank v. Fonda, 18 Misc. 114, 117, 118, 41 N.Y.S. 112 (1896). An unassessed obligation for taxes is sufficiently a debt so as to entitle the government to move to set aside a fraudulent transfer made

by the debtor. State of New Jersey v. Anderson, 203 U.S. 483, 494, 27 S.Ct. 137, 141, 51 L.Ed. 284 (1906); Hartman v. Lauchli, 238 F.2d 881, 887 (8th Cir. 1956), cert. denied, 353 U.S. 965, 77 S.Ct. 1048, 1 L.Ed.2d 915 (1957).

It may be appropriate to note as a principle of general application in tax matters, that transactions, though formally unexceptionable and in compliance with a provision of the tax statute, are to be disregarded and held of no effect if they have no purpose germane to the conduct of the tax obligor's business other than tax minimization, and, *a fortiori*, the evasion of taxes already a potential liability. Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659 (1949); Bazley v. Commissioner of Internal Revenue, 331 U.S. 737, 67 S.Ct. 1489, 91 L.Ed. 1782 (1947); Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945); Griffiths v. Helvering, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319 (1939); Minnesota Tea Co. v. Helvering, 302 U.S. 609, 58 S.Ct. 393, 82 L.Ed. 474 (1938); Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596 (1935), etc.

5. The fact that judgment is directed against both Planet and Plastic requires some passing note. As originally served, the complaint contained two "counts." The first cause of action in an unnumbered preamble, the presence and purport of which is unclear, declared that plaintiff sought judgment against Plastic, "successor corporation to [Planet], for federal tax liabilities of said [Planet]

**334**

of $81,563.52 plus interest to the date of entry of judgment at the rate of $8.01 per diem and the costs of the action, and to have execution therefor.

Inasmuch as the assets of Planet appear to have been commingled with those of Plastic and to have been availed of by Plastic in producing profits and gains since March 1, 1963, all assets of Plastic are deemed for the purposes of satisfying plaintiff's judgment to be the property of Planet.

Submit judgment for signature by the Court on five days' notice of settlement.

and foreclosure of said tax liabilities upon the assets of the defendant [Plastic]."

Count II similarly begins with an unnumbered preamble which alleges "in the alternative that the defendant [Plastic] is the transferee for an inadequate consideration of all of the assets of the taxpayer corporation, [Planet], and that [Plastic] is liable to the United States, a creditor of the taxpayer corporation [Planet] at the time of said transfer."

The caption in the complaint names both Plastic and Planet as defendants. The summons was served on both corporations and both appeared by the same attorney. The "Wherefore" clause in the complaint with which Count I concludes asks for a judgment that Plastic is liable for Planet's federal tax liabilities. The "Wherefore" clause which follows Count II appears to ask for relief for which the entire complaint serves as a predicate. Judgment is prayed for against Planet for the full amount of its federal tax liabilities, and against Plastic "to the full extent of the fair market value of the assets as of the date said assets were transferred" by Planet to Plastic, and for a foreclosure of the income tax liabilities of Planet against those assets in the Plastic corporation.

The action proceeded to trial as to Count I only, the trial of Count II being deferred pending determination by the Court of Count I. During the trial an order was made on the government's formal motion to amend paragraph 7 in the first count of the complaint to read as follows:

"On or about March 1, 1963, Plastic Electro-Finishing Corporation purported to purchase certain assets and assume certain liabilities of Planet Plating Company, Inc. Notwithstanding the fact that the two corporations, defendants herein, entered into such an agreement, the two corporate entities operated as one with the intent of defrauding the present and future creditors of Planet Plating Company, Inc., including the United States of America. The attempted transfer of assets from Planet Plating Company, Inc. to Plastic Electro-Finishing Corporation was not an arms-length transaction; Plastic Electro-Finishing Corporation should be viewed as merely the continuation of Planet Plating Company, Inc. for the purpose of establishing liability for the federal taxes, penalties and interest set forth at Paragraph 4 of the Amended Complaint in this action."

At the time the order of amendment was signed there was some colloquy between counsel and the Court as to whether defendants might not in consequence of the amendment wish to reopen the case for the introduction of further proof. The issue was resolved when after the conclusion of the first stage of the trial the attorneys for the parties executed a stipulation by which the plaintiff withdrew with prejudice Count II of the amended complaint and consented to a reopening of the record to permit the defendant to introduce further proof of a limited nature.

The reopened trial was duly held and concluded on December 9, 1969, whereupon the case was submitted to the Court for its decision. The briefs of the parties, later filed, do not raise any question as to the competence of the Court to adjudicate liability under Count I against *both* corporations, notwithstanding the government's withdrawal of Count II. In any event the evidence adduced at trial was such that the Court finds it appropriate to, and does, apply Fed. R.Civ.P. 15(b) respecting amendments to conform the pleadings to the evidence adduced at trial.