**Jane U. ELLIOTT, Plaintiff,**

v.

**Robert B. ELLIOTT, Defendant.**

**No. 68 Civ. 2900.**

United States District Court,
S. D. New York.

Feb. 22, 1973.

See also, D.C., 49 F.R.D. 283.

Milton S. Zeiberg, New York City, for plaintiff.

Fink, Weinberger & Levin, New York City, for defendant; Samuel G. Fredman, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

### PRELIMINARY STATEMENT

This action for breach of contract was tried to the Court without a jury. The litigation stems from a Separation Agreement entered into by the parties who were subsequently divorced. The Agreement provided that the husband (defendant herein) pay to the wife (plaintiff herein) support and maintenance of $10,000 annually to be increased or decreased in light of defendant's income.

It is undisputed that with the exception of payments totalling $3950 made in 1963, $400 in 1971 and $7150 in 1972, defendant has not made any payments to plaintiff since January, 1962. The parties disagreed over whether the $3950 paid in 1963 was for payments due before or after January, 1962. Defendant contended, however, that subsequent events discharged him from his contractual obligations under the Separation Agreement.

Sometime prior to 1964 plaintiff became liable to the Internal Revenue Service for unpaid taxes. During 1964 the parties entered into negotiations

**50**

dealing with defendant's alimony arrears and seeking a way for plaintiff to receive funds sufficient to pay the amount she owed to the Internal Revenue Service. These negotiations resulted in an Amended Agreement dated August 31, 1964 which forgave defendant's arrears in return for his making payments on an increased mortgage on plaintiff's residence. The proceeds of the mortgage were to be used by the plaintiff to pay her tax liability. However, the lender refused to grant the mortgage. Defendant has seized on this fact in an attempt to absolve himself from all past and future obligations to plaintiff. Such a complete forgiveness was clearly not the intent of the parties. Rather, the Amended Agreement was a release of the alimony arrears on condition that a mortgage would be granted which would have permitted plaintiff to pay her taxes. Since the Amended Agreement remained inoperative because of a failure of condition, the original Separation Agreement remained in force.

In amplification of the foregoing, the findings of fact and conclusions of law which follow demonstrate that judgment must be entered for the plaintiff.

### FINDINGS OF FACT

1. Plaintiff is a resident of Massachusetts. Defendant is a resident of New York.

2. Plaintiff and defendant were married on May 9, 1943, and were divorced on May 28, 1954 by a Decree of Absolute Divorce made and entered in the Second Civil Court of Bravos District, State of Chihuahua, Republic of Mexico, in an action instituted by plaintiff against defendant.

3. There were no children of said marriage. Defendant remarried immediately after the said divorce. Plaintiff has not remarried.

4. The Divorce Decree incorporated by reference a Separation Agreement by and between plaintiff and defendant dated May 4, 1954. The terms of this Separation Agreement were arrived at after arm's length negotiations by counsel for the parties. The negotiations involved full exploration of the financial situation of the parties.

5. Defendant agreed in said Separation Agreement to pay to plaintiff after the first year following the divorce the base sum of $10,000 annually for her support and maintenance in weekly installments of $192.31 until her death or remarriage. Separation Agreement ¶3(A).

6. The aforesaid installment payments were a standard based upon defendant's representation in the Separation Agreement that his then net annual income was at the annual rate of $40,000 before payment of his income taxes. Separation Agreement ¶3(A).

7. Defendant also agreed in said Separation Agreement that the base annual payment of $10,000 by defendant to plaintiff would be increased or decreased based upon annual changes in defendant's "net annual income" of $40,000 before payment of his income taxes. In the event defendant's net annual income after the first year following the execution of the Separation Agreement were to vary above or below said $40,000, the payments to plaintiff by defendant would be increased or decreased by 25% of this variation, as the case might be, but in no event would the yearly payments to plaintiff total less than $5000 nor more than $20,000. Separation Agreement ¶3(C)(I).

8. The aforesaid standard net annual income of $40,000 was defined in the Separation Agreement and was intended by the parties to be defendant's net annual income before payment of his income taxes from the radio-television firm of Elliott-Goulding Productions, which paid defendant $40,000 annually at that time. Separation Agreement ¶3(B)(I) and (II).

9. The aforesaid standard of $40,000 was further defined in the Separation Agreement to be based upon the annual gross income of said radio-television

firm of Elliott-Goulding Productions, its successors or affiliates, in which defendant was an equal partner with Raymond Goulding; and the annual gross income of said partnership was represented by defendant to be approximately $148,000 annually. Separation Agreement ¶3(B)(I) and (II).

10. The parties agreed that for purposes of this action the computation of the increment payment would be made on a calendar year rather than a fiscal year basis as provided in the Separation Agreement ¶3(C)(II); and that such computation would be based on the profit and loss statements of Elliott-Goulding Productions, its successors or affiliates.

11. In each calendar year since 1962, the distribution received by defendant from Elliott-Goulding Productions (or its successors or affiliates in the same business) exceeded $40,000, to wit:

| | |
|---|---|
| 1962 | $50,838 |
| 1963 | 78,811 |
| 1964 | 82,781 |
| 1965 | 59,368 |
| 1966 | 57,914 |
| 1967 | 54,328 |
| 1968 | 55,408 |
| 1969 | 69,180 |
| 1970 | 98,869 |
| 1971 | 90,164 |
| 1972 | Not Yet Computed |

12. Since January 1, 1962, defendant has made the following payments to plaintiff:

| | |
|---|---|
| 1963 | $3950 |
| 1971 | $ 400 |
| 1972 | $7150 |

The sum of $3950 paid in 1963 was for amounts due and owing prior to January 1, 1962. The sums of $400 paid in 1971 and $7150 paid in 1972 were made pursuant to an order of the Family Court of the State of New York.

13. Plaintiff owed and still owes federal income taxes.

14. On or about January 30, 1964, a notice of federal tax lien was served upon the defendant by the Internal Revenue Service. The amount of said federal tax lien was $10,287.50.

15. Defendant's then counsel advised the Internal Revenue Service that defendant did not owe any money to plaintiff.

16. Although a notice of levy was subsequently served upon him, defendant has made no payment to the Internal Revenue Service to the date hereof nor has he informed the Internal Revenue Service of his monetary obligation to the plaintiff.

17. After the service of the notice of federal tax lien, defendant negotiated with plaintiff for a forgiveness of past due alimony under the Separation Agreement and for a means to pay plaintiff's unpaid taxes.

18. The negotiations resulted in the execution of an instrument by plaintiff and defendant on or about August 31, 1964, which provided, *inter alia*, that the mortgage on plaintiff's Cohasset, Massachusetts, residence would be increased from $4735 to $25,000. It was the intention of the parties to use the proceeds of the increased mortgage to satisfy the federal tax lien. Plaintiff agreed to forgive defendant's past due alimony only in return for defendant's promise to pay the increased mortgage. In consideration of forgiveness of his arrears, defendant agreed to make monthly mortgage payments of $168.47 on the increased mortgage. Defendant also agreed to resume monthly payments under the Separation Agreement on January 1, 1965.

19. The Boston Five Cents Savings Bank declined to grant the increased mortgage. Defendant had knowledge of this fact.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter. 28 U.S.C. § 1332.

2. The Separation Agreement entered into by the parties on May 4, 1954

is a binding agreement which remains in force.

■ 3. The plaintiff's debt to the Internal Revenue Service did not excuse defendant from his debt to plaintiff.

■ 4. The instrument executed by the parties on or about August 31, 1964, was a written contract of partial release from the Separation Agreement which was to become operative upon the bank's granting the mortgage. Since the release was conditional and the condition did not occur, this agreement was inoperative. If the parties had foreseen that the bank would not grant the mortgage, it is clear that the plaintiff would not have agreed to a contract which provided that defendant would be relieved of all obligations should the mortgage not be granted. Defendant has not carried his burden of persuasion that he was released of all liability when the mortgage was refused. Stiebel v. Grosberg, 202 N.Y. 266, 95 N.E. 692 (1911).

5. Since the release was inoperative, the parties remained bound by the terms of the original Separation Agreement.

6. Defendant has breached the provisions of the Separation Agreement as to base and increment payments from on or before January 1, 1962 to the present.

■ 7. Defendant is indebted to plaintiff for base and increment payments under the Separation Agreement from January 1, 1962 to the present, less those sums actually paid to plaintiff by defendant by order of the Family Court of the State of New York.

■■ 8. Plaintiff is entitled to interest at the rate of six percent per annum and to a reasonable attorney's fee. Separation Agreement ¶5. Plaintiff's attorney has devoted in excess of 700 hours to this case. He has asked that his fee be limited to $10,000. The Court has concluded that $10,000 is a reasonable fee.

Settle judgment on notice consonant herewith.