**Jane U. ELLIOTT, Plaintiff,**

v.

**Robert B. ELLIOTT et al., Defendants.**

**No. 68 Civ. 4427 R.J.W.**

United States District Court,
S. D. New York.

Oct. 29, 1973.

See also D.C., 49 F.R.D. 283.

451

Milton S. Zeiberg, New York City, for plaintiff.

Fink, Weinberger, Levin & Charney, New York City, for defendants; Samuel G. Fredman, New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

This is an action to impose constructive trusts upon the "fee title" to a town house located at 121 East 64th Street, New York, New York, owned by defendant Colony Land Corp. (hereinafter "Colony"), and upon the stock of Colony, all of which is owned by defendant Lee K. Elliott. Plaintiff claims that the town house was purchased by defendant Robert B. Elliott (hereinafter "Elliott"), in the name of Colony; that his gift of shares in Colony to his second wife, defendant Lee K. Elliott, and to her as custodian for their minor children at the time of his initial purchase was intended to defraud his creditors including plaintiff; that he later fraudulently transferred his interest in Colony to Lee K. Elliott for an inadequate consideration; and that a later cancellation of the shares held by Lee K. Elliott as custodian and their reissuance to her individually was also fraudulent. Plaintiff contends that unless these constructive trusts are imposed, she will be unable to collect the judgment entered in her favor in her alimony action against Elliott (68 Civ. 2900).

■ Such constructive trusts will be imposed if defendant Elliott was insolvent at the times of the transfers and if they were made without adequate consideration [1] or if the transfers were made with the intent to hinder, delay, or defraud creditors.[2]

The general outline of the facts of the various transactions is substantially undisputed. Colony was organized under the laws of the State of New York on October 10, 1956 by defendants Elliott and Lee K. Elliott. The original directors named in its Certificate of Incorporation were Elliott, Lee K. Elliott, and Gail B. Elliott. On October 15, 1956, Colony held its first meeting of Incorporators. At that meeting Elliott, Lee K. Elliott, and Gail B. Elliott were selected as directors. Elliott was elected President and Vice-President and Lee K. Elliott was elected Secretary and Treasurer. Colony was capitalized at 500 shares of no par value common stock of which 250 shares were issued on October 16, 1956. Elliott subscribed for these shares at $36.00 per share, a total of $9,000, which he paid Colony. He retained 50 shares, made a gift of 50 shares to Lee K. Elliott individually, and a gift of 50 shares each to their three minor children naming Lee K. Elliott as custodian. Elliott received no consideration for these transfers to his wife and children. At that time, Elliott also loaned Colony the sum of $26,800.

In October, 1956, Colony acquired title to a town house at 126 East 79th Street, New York, New York, using the said $9,000 and $26,800 as the cash payment. From 1956 through the end of 1960 the individual defendants, together with their children, resided in a portion of these premises; the balance of the premises was rented to other tenants. Lee K. Elliott made no contribution to the purchase price at the time of the closing.

On about November 18, 1960, Colony contracted to purchase the premises at 121 East 64th Street, New York, New York, and acquired title on or about December 11, 1960. The cost of the property was $145,000, of which $45,000 was paid in cash and the balance was financed by a purchase money mortgage. The cash paid was provided by a loan

---

1. N.Y. Debtor and Creditor Law § 273 (McKinney 1945):

"Conveyances by insolvent

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

2. N.Y. Debtor and Creditor Law § 276 (McKinney 1945):

"Conveyance made with intent to defraud

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

from Elliott to Colony. Provision was made in the purchase money mortgage which was personally guaranteed by Elliott, for its acceleration in the event of Elliott's death, and Elliott provided a life insurance policy in the amount of $100,000 to secure payment thereof. Lee K. Elliott made no contribution to the purchase price at the time of the closing.

From on or about January 1, 1961, to the present the individual defendants have resided, with their children, at 121 East 64th Street pursuant to a written lease between Colony and Elliott for the first ten years and without a lease, but on the same terms and conditions as contained in that lease, thereafter.

On about March 1, 1961, Colony sold the premises at 126 East 79th Street for $97,000 receiving $37,000 in cash which it transferred to Elliott.

A Special Combined Meeting of Stockholders and Directors of Colony was held on or about December 14, 1961 at which a resolution was passed adding a by-law providing that Colony might sign no lease for the occupancy of any premises owned by it except with persons who are stockholders.

Prior to August, 1962, Lee K. Elliott received an inter vivos gift of stock worth $22,000 to $25,000 from Gail B. Elliott, her mother-in-law. From the proceeds of the sale of a portion of this stock, Lee K. Elliott purchased from Elliott for $5,855.03 on about September 30, 1963 the 50 shares of Colony stock that Elliott owned. The property had been valued at $147,000 as of October 4, 1963, by the real estate firm of Douglas Gibbons Hollyday & Ives, Inc. Having divested himself of ownership, Elliott, on or about October 22, 1963, resigned as an officer and director of Colony and has not at any time since served as either an officer or director.

On about October 24, 1964, Colony refinanced the purchase money mortgage on 121 East 64th Street with a new first mortgage from the Chase Manhattan Bank in the amount of $105,000; and the original purchase money mortgage was paid off from the proceeds of the refinancing. At the time it approved the new mortgage, the Chase Manhattan Bank valued the property at $195,000.

Between 1956 and 1966, at about the times of the birth of two of their children born after the formation of Colony, 50 shares of Colony stock for each were issued to Lee K. Elliott as custodian, increasing the number of shares which she held as custodian to 250.

In November, 1966, the 250 shares of stock held by Lee K. Elliott as custodian for her children were cancelled and the shares were reissued to Lee K. Elliott individually.

■ The Court finds that in 1956, at the time of the formation of Colony, Elliott was in arrears on his alimony payments to plaintiff pursuant to their Separation Agreement, although the precise amount of arrearages is unclear and unnecessary to the determination of this action; therefore, plaintiff was a creditor of Elliott within the meaning of N. Y. Debtor and Creditor Law § 270 et seq. (McKinney 1945 and 1973). Tuitt v. Tuitt, 36 Misc.2d 418, 232 N.Y.S.2d 973, 977 (Sup.Ct.N.Y.Co.1962). As a creditor, she can seek to set aside an allegedly fraudulent conveyance. However, Elliott, at that time, was making regular periodic payments to plaintiff which at least met his then current base payment obligation.

■■ The Court also finds that the formation of Colony and Elliott's making of gifts of shares of that corporation to his wife and children were not done with intent to hinder, delay, and defraud creditors including plaintiff. N.Y. Debtor and Creditor Law § 276 (McKinney 1945). The evidence presented withstands the careful scrutiny accorded to transfers between husband and wife. Herter v. Krzewinski, 233 App.Div. 240, 251 N.Y.S. 331 (4th Dep't. 1931); Allee v. Slane, 26 App. Div. 455, 50 N.Y.S. 55 (2d Dept. 1898); In re Rosenfield's Will, 213 N.Y.S.2d 1009 (Surr.Ct., Westchester Co. 1961),

aff'd without opinion, 18 A.D.2d 718, 236 N.Y.S.2d 941 (2d Dep't. 1962). This holds especially true since the burden of proving fraudulent intent is on the party asserting it. Lupia v. Lupia, 199 N.Y.S.2d 733 (Sup.Ct., Suffolk Co. 1960). Elliott had a substantial income; he paid $9,000 for the 250 shares purchased; he retained 50 shares for himself; he loaned additional money to Colony rather than making an outright donation of a like sum to it; the property purchased was income-producing. The transactions were carried out in accordance with the advice of counsel and for the purpose of achieving tax benefits. Under these circumstances, the Court does not discern any fraudulent intent in Elliott's making such gifts while retaining a one-fifth interest himself. Furthermore, the fact that Elliott was at times current in his payments to plaintiff subsequent to the making of these conveyances provides additional support for finding that there was no fraudulent intent behind these transactions.

█ Elliott has also presented sufficient proof to rebut the presumption of insolvency which arises when a conveyance is made without consideration. N.Y. Debtor and Creditor Law §§ 271(1) and 273 (McKinney 1945); Seligson v. Sandner, 42 F.Supp. 415 (S.D.N.Y. 1941); Ga Nun v. Palmer, 216 N.Y. 603, 611–612, 111 N.E. 223 (1916); Gafco, Inc. v. H. D. S. Mercantile Corp., 47 Misc.2d 661, 263 N.Y.S.2d 109 (Civil Ct., N.Y.Co.1965). Moreover, the amount of Elliott's liability on his debt to plaintiff at the time of the 1956 transactions has not been satisfactorily proven. Furthermore, no evidence was introduced concerning Elliott's liability at that time on the mortgage on plaintiff's Cohasset, Massachusetts house for which Elliott was responsible; nor does the record indicate Elliott's liability, if any, on the mortgage on 126 East 79th Street. Even including the two mortgages among Elliott's personal liabilities, they became absolute and matured only on a periodic basis; therefore, the total outstanding debt would not be included in Elliott's liabilities as of the date of his conveyances of Colony stock. Furthermore, were Elliott the mortgagor on the mortgage on 126 East 79th Street, which he apparently was not, the town house would then have been a salable asset the value of which would be included among Elliott's assets. In either case, his assets exceeded his liabilities so that he did not fall within the statutory definition of insolvency.

██ However, the Court finds that Elliott's 1963 conveyance of his 50 shares of Colony stock to Lee K. Elliott was made with the intent to hinder, delay, and defraud creditors in violation of N.Y. Debtor and Creditor Law § 276 (McKinney 1945). Elliott owed plaintiff alimony since at least January, 1962, and he was making no attempt to pay it. He had accrued other debts and he perceived his career as going badly. Elliott in an admission which he could not explain away at trial, stated:

> "Debts were beginning to pile up against me (not excluding some lessening of the payments due the plaintiff) and I became frightened lest any of my creditors could place themselves in a position where they might reach any interest I would hold in the 64th Street property."

The Court can think of no more persuasive evidence of an intent to hinder, delay, and defraud creditors than is contained in this admission. Where this motivation is shown, the conveyance is fraudulent even though the grantor is solvent, Pattison v. Pattison, 301 N.Y. 65, 73–74, 92 N.E.2d 890 (1950), and even if he receives fair and adequate consideration. United States v. 58th Street Plaza Theatre, Inc., 287 F.Supp. 475 (S.D.N.Y.1968). Such a fraudulent conveyance is void as to both present and future creditors. There can be no doubt that as of 1963, defendant Elliott knew that plaintiff was both a present and future creditor.

█ The Court further finds that the 1966 transaction in which the 250 shares

issued to Lee K. Elliott as custodian for her children were cancelled and reissued to her individually was also done with actual intent to hinder, delay, and defraud creditors including plaintiff. Elliott had been the grantor of those shares. When, for whatever reason, they were cancelled, they should have gone into the corporate treasury or been reissued to the original grantor. Their reissuance to Lee K. Elliott without any consideration must be viewed as in effect a conveyance without consideration from Elliott to her as of the date of their reissuance. This holds true even though the cancellation of the shares as originally issued was done on the advice of counsel. Moreover, only the cancellation was effected upon the advice of counsel; the reissuance of said shares to Lee K. Elliott individually was not carried out in accordance with advice of counsel.

As of 1966, Elliott was further indebted to plaintiff. The 1964 agreement between plaintiff and defendant Elliott which never became operative was not intended to absolve Elliott of all past and future alimony obligations. *See* Elliott v. Elliott, 355 F.Supp. 48 (S.D.N.Y. 1973). Nor could Elliott have reasonably believed that he was no longer required to pay any money to plaintiff. Elliott continued to perceive himself as having difficulty meeting his financial obligations. Earlier in this action he stated that, "I am certain this Court cannot expect that in the context of my situation, having withdrawn from a position of ownership in Colony in 1963, there was any reason for me to return to that status." This statement in the context of Elliott's position at the time coupled with the 1963 transaction and the evidence relating thereto, again indicates an intent to hinder, delay, and defraud creditors by, in effect, making a gift of the shares to his wife so as to put them beyond the reach of creditors in violation of N.Y. Debtor and Creditor Law § 276 (McKinney 1945).

Furthermore, the Court finds that defendant Lee K. Elliott had actual knowledge of the fraudulent intent behind the 1963 and 1966 transactions so that she is not protected in her title to the stock even assuming *arguendo* that she paid fair and adequate consideration in the 1963 transaction. United States v. 58th Street Plaza Theatre, Inc., *supra;* Lipson v. H. M. R. Enterprises, Inc., 16 Misc.2d 477, 183 N.Y.S.2d 160 (Sup. Ct., Bronx Co. 1959), modified on other grounds, 9 A.D.2d 759, 193 N.Y.S.2d 138 (1st Dep't. 1959), aff'd, 8 N.Y.2d 989, 205 N.Y.2d 161, 169 N.E.2d 285 (1960); *See also,* Anderson v. Blood, 152 N.Y. 285, 46 N.E. 493 (1897). A constructive trust in favor of plaintiff will, therefore, be imposed in accordance with N.Y. Debtor and Creditor Law § 278(1)(a) and (b) (McKinney 1945), on the 50 shares conveyed by defendant Elliott to defendant Lee K. Elliott in 1963 and on the 250 shares reissued to Lee K. Elliott individually in 1966.

It should finally be noted that although plaintiff did not obtain a judgment against defendant Elliott until February 28, 1973, and the Court is unaware of any other judgments against him, a judgment is unnecessary to a finding that there has been a fraudulent conveyance so long as the party seeking to set aside the conveyance is a creditor. *E. g.*, United States v. Plastic Electro-Finishing Corporation, 313 F.Supp. 330 (E.D.N.Y.1970); Schnarch v. Shapiro, 177 Misc. 410, 30 N.Y.S.2d 537 (Sup.Ct., Kings Co.1941).

Having found that Elliott knew plaintiff was a creditor, the Court finds that his 1963 and 1966 conveyances were fraudulent although his debt to plaintiff had not been reduced to judgment.

The foregoing constitutes the findings of fact and conclusions of law of the Court for the purposes of Rule 52, Fed. R.Civ.P.

Settle judgment on notice.